**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**


**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.**


| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, : | No. 34 WAP 2012 |
| : | |
| Appellee : | Appeal from the Judgment of Sentence of |
| : | the Court of Common Pleas of Allegheny |
| : | County entered July 19, 2011 at No. CP- |
| v. : | 02-CR-0001850-2011. |
| : | |
| : | |
| MATTHEW STEVEN EISENBERG, : | |
| : | |
| Appellant : | ARGUED:  April 9, 2013 |


**OPINION**


**MR. CHIEF JUSTICE CASTILLE**          **DECIDED:  AUGUST 19, 2014**


The controlling issue in this unusual direct appeal from a conviction arising under the Gaming Act[1] is whether imposition of a mandatory minimum fine of $75,000 for a conviction of a first-degree misdemeanor theft of $200 violates the prohibition of Article I, Section 13 of the Pennsylvania Constitution against excessive fines.[2]  For the reasons set forth below, we conclude that, under the circumstances, the fine imposed indeed is unconstitutionally excessive. Accordingly, we vacate that portion of the judgment of sentence involving the mandatory fine and we remand to the trial court to determine, in

---

[1] Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101-1904.

[2] The Pennsylvania Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." PA. CONST. art. I, § 13.

its discretion, the appropriate fine to be imposed commensurate with appellant's offense.

## I. Background and Jurisdiction

Appellant's conviction arose from a guilty plea, and thus the facts are undisputed. Between November 26 and November 30, 2010, appellant, a poker dealer at the Rivers Casino in Pittsburgh, took $200 in poker chips from his gaming table by sliding chips from the pot into his personal tips box. After casino security personnel and state police reviewed video tapes of the theft, appellant was arrested and charged with one count of Unlawful to Take/Claim with Intent to Defraud under Section 1518(a)(17) of the Gaming Act. See Notes of Testimony, Plea and Sentencing Hearing, 07/19/11, at 11 (hereinafter "N.T.").[3]

On July 19, 2011, appellant entered a plea of guilty to the single theft charge, which the Gaming Act grades as a first-degree misdemeanor. See 4 Pa.C.S. § 1518(b)(1)(ii). During the plea and sentencing hearing, the trial prosecutor adverted to a negotiated plea agreement and addressed the trial court:

> In exchange for [appellant's] plea to the sole count of the Information, we would ask that [appellant] be placed on a period of

---

[3] Section 1518(a)(17) provides:

> It shall be unlawful for an individual to claim, collect or take, or attempt to claim, collect or take, money or anything of value in or from a slot machine, gaming table or other table game device, with the intent to defraud, or to claim, collect or take an amount greater than the amount won, or to manipulate with the intent to cheat, any component of any slot machine, table game or table game device in a manner contrary to the designed and normal operational purpose.

4 Pa.C.S. § 1518(a)(17).

probation to be set by the Court; and there, also, is a matter of a fine, Your Honor. I don't know if you want to address that at this point.

N.T., at 2-3. The prosecutor then recited the language of Section 1518(b)(2)(i) of the Gaming Act, which mandates a fine of "not less than $75,000 nor more than $150,000 if the person is an individual" who commits a first violation of subsection (a)(17), 4 Pa.C.S. § 1518(b)(2)(i)(A). Appellant's counsel agreed to this reading of the statute, but noted that he was prepared to make an argument challenging the constitutionality of the provision. N.T., at 3-4. The trial court then asked counsel if there was "anything you want to tell [the court] about your client" prior to sentencing. Counsel relayed to the court that at the time of sentencing appellant was 26 years old, he had no prior convictions, and he had been unemployed since the incident as he was enrolled full-time as a student in a medical assistant program at a vocational school in Pittsburgh. Counsel also noted that appellant was living with his fiancée, the couple were expecting their first child, and they did not own a house. N.T., at 4.

Following the plea colloquy, counsel stated the grounds for objection to the mandatory fine as follows:

> For the record, we object to that fine being imposed for various reasons.
>
> The first and foremost, we believe it to be unconstitutional under the Pennsylvania Constitution and the United States Constitution as cruel and unusual punishment. The unusual is really the word. As well, if you look at any other theft crime that the Commonwealth has ever brought against a defendant, there's nothing that comes close to imposing a fine that we have here. For example, we could steal, you know, $10,000 from a church. We could steal $20,000 from a mom and pop store down the street. We could steal $10,000 from this courtroom or from anybody in this courtroom. The fine is not $75,000. It's a draconian law. . . .
>
> We understand how it's written, Your Honor. I know the Court does as well; and we just do not believe that is proper in this particular case. . . . [W]e couldn't even find a felony theft charge that would carry even close to this kind of a fine. I mean, this is more than you impose in any particular case.

What we're doing here, we're protecting the rights of the casino. We have -- the Legislature has placed the casino above everybody else in Pennsylvania. Not only the church, but any establishment whatsoever is below the casino in what we're trying to protect. We believe that to be incorrect and unconstitutional. We understand the Court's requirements, but we would like to be heard on that, that the fine does not match the act. That's where we are.

Id. at 12-14.

After the prosecutor declined to respond, the trial judge noted that he believed the case "will not end today," he was "sensitive" to the defense argument, and he "agree[d] in large part." The judge added that he knew of no other entity given the sort of protection afforded the casino in this scenario, noting that, in theory, he could impose a fine of $150,000 for a $200 theft and had no discretion but to impose $75,000 as a minimum fine. Without specifically responding to appellant's claim of unconstitutionality, the judge simply stated that he was obligated to "interpret the law as it reads," and imposed the mandatory minimum fine. Id. at 14-15.

Appellant filed a post-sentence motion objecting, *inter alia*, that the mandatory fine was excessive; that it was within the court's power to require that the fine relate to the crime; and that the fine was "blatantly unconstitutional on its face," as it violated the excessive fines proscription of Article I, Section 13 and the prohibition against cruel and unusual punishment under the Eighth Amendment. The Commonwealth filed a responsive brief arguing that, under the Gaming Act, only the Pennsylvania Supreme Court could resolve the constitutionality of the mandatory fine provision and, in any event, the provision was constitutional.

On November 15, 2011, the trial court filed an opinion that began by noting that appellant's post-sentence motion was deficient because his various objections were not supported by developed arguments or case references, and thus, "many, if not all of the claims, have been waived for failure to develop the argument." Trial Ct. Op. at 2-3.

Nevertheless, the court addressed each claim. As relevant here, the court rejected the excessive fines claim by noting that this Court then had pending before it a discretionary appeal in Commonwealth v. Carela-Tolentino, 17 A.3d 922 (Pa. 2011), posing the question of whether the imposition of a mandatory minimum fine of $25,000 for drug trafficking offenses violated the Eighth Amendment or Article I, Section 13.[4] In the trial court's view, the eventual decision in Carela-Tolentino "will shed valuable light," but absent such guidance, it saw no merit in the claim. Trial Ct. Op. at 5-6.[5]

Appellant appealed to the Superior Court, claiming that the mandatory minimum fine was excessive as a statutory matter and as a constitutional matter. In its responsive brief, the Commonwealth argued that appellant's constitutional claim was within the exclusive appellate jurisdiction of this Court pursuant to Section 1904 of the Gaming Act, which provides, in relevant part, that this Court "shall have exclusive jurisdiction to hear any challenge to or to render a declaratory judgment concerning the constitutionality of this part." 4 Pa.C.S. § 1904. The Commonwealth added that: "The 'part' referred to in Section 1904 is the entirety of the Gaming Act." Commonwealth's Brief at 13 (quoting DePaul v. Commonwealth, 969 A.2d 536, 538 n.1 (Pa. 2009) (Court entertained constitutional challenge to Section 1513 of Gaming Act prohibiting political contributions by certain individuals involved in gaming industry)). On October 9, 2012,

---

[4] The Supreme Court later summarily affirmed, without an opinion, the order of the Superior Court, upholding the fine imposed on Carela-Tolentino. See 48 A.3d 1221, 1222 (Pa. 2012) (per curiam). This author filed a Dissenting Statement, which was joined by Madame Justice Todd.

[5] The court rejected appellant's Eighth Amendment argument by noting the settled review paradigm for such claims, then adding that appellant did not support his statement of unconstitutionality, and the court would not do "counsel's heavy lifting for him." Trial Ct. Op. at 6-7.

the Superior Court transferred the appeal to this Court, finding that the constitutional challenge was within our exclusive appellate jurisdiction under Section 1904.[6]

We did not direct additional briefing: the matter proceeded to oral argument upon the briefs filed in the Superior Court. Neither party has challenged the propriety of the transfer order, or the notion that the matter is properly before this Court on direct appeal under Section 1904. It is not difficult to imagine a counter-argument on the jurisdictional question, given the narrowness of the constitutional challenge to the Gaming Act's fines provision. On the other hand, it is neither settled nor certain that a constitutional challenge to a specific application of a provision of the Gaming Act is **not** encompassed within the appellate jurisdiction contemplated by Section 1904. No challenge to jurisdiction having been raised, and the absence of jurisdiction not being apparent, we will accept the appeal and proceed to the parties' arguments. Contrast Pennsylvania State Troopers Ass'n v. Commonwealth Gaming Control Bd., 920 A.2d 173, 179-80 (Pa. 2007) (finding no jurisdiction under Act where jurisdiction was disputed and where essence of challenge implicated Board's implementation of Act rather than constitutionality of Act).[7]

---

[6] The Superior Court transferred the appeal pursuant to 42 Pa.C.S. § 5103(a) (transfer of erroneously filed matters) and Pa.R.A.P. 751(a) ("If an appeal or other matter is taken to or brought in a court . . . which does not have jurisdiction of the appeal or other matter, the court . . . shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper court of this Commonwealth . . . .").

[7] As noted *supra*, appellant also raises a non-constitutional challenge, claiming that the mandatory minimum fine is inconsistent with the fines scheme outlined in the Crimes Code. We are mindful of the canon of constitutional avoidance, see generally 1 Pa.C.S. § 1922 and Commonwealth v. Bavusa, 832 A.2d 1042, 1050-51 (Pa. 2003), and we emphasize that our proceeding to the constitutional issue here should not be read as approval of the Superior Court's manner of proceeding in this case. Before transferring an appeal to this Court on the grounds that a constitutional challenge to the Gaming Act is present and vests exclusive jurisdiction with us, the Superior Court should be mindful (continued…)

## II. Reviewability: Waiver

The Commonwealth contends that appellant waived his claim that the $75,000 mandatory minimum fine for his $200 theft is excessive under Article I, Section 13 of the Pennsylvania Constitution.[8]  The Commonwealth argues that appellant's plea of guilty operated to waive all defenses and defects except claims sounding in a lack of jurisdiction, invalid guilty plea, or illegal sentence.[9]  The Commonwealth, citing

(…continued)
of whether other, non-constitutional bases for decision are raised which may resolve the appeal.  Here, if appellant's parallel statutory claim were meritorious, the transfer could have been avoided.  Ordinarily, then, our jurisprudence would dictate remanding the case to the Superior Court to address the statutory claim if its resolution could potentially obviate the need to reach the constitutional question.

Here, however, it appears that the statutory claim is facially meritless.  Appellant's theory is that, because Section 1101(4) of the Crimes Code caps fines for first-degree misdemeanors at $10,000, the Gaming Act's $75,000 mandatory-minimum fine constitutes an illegal sentence.  See Appellant's Brief at 6-7.  However, subsection (4) is subject to the proviso that a first-degree misdemeanant may be required to pay "any higher or lower amount specifically authorized by statute."  18 Pa.C.S. § 1101(9).  Because the Gaming Act is a statute authorizing a higher amount, imposition of the $75,000 fine is not contrary to the plain language of Section 1101 when read as a whole.  Accord Commonwealth's Brief at 11.

Ultimately, then, returning the case to the Superior Court would be wasteful of judicial resources, and the constitutional challenge to the Gaming Act continues to anchor our direct appeal jurisdiction.  Thus, we proceed to address appellant's constitutional claim.

[8] Appellant also raises additional constitutional claims and sub-claims regarding: (1) whether the fine is cruel punishment under the U.S. or Pennsylvania Constitution; (2) whether the fine is excessive under the U.S. Constitution; (3) whether the fine is unconstitutional on its face; and (4) whether the fine violates due process.  In light of our disposition, we need not pass upon the additional theories.  See, e.g., Commonwealth v. Easley, 396 A.2d 1198 (Pa. 1979) (trial court's obvious constitutional error obviated need to address appellant's additional allegations of trial court error).

[9] Although the Commonwealth forwards multiple waiver arguments on appeal, it does not argue that acceptance of the mandatory fine was a part of appellant's negotiated
(continued…)

Commonwealth v. Brougher, 978 A.2d 373, 377 (Pa. Super. 2009), concedes that "[g]enerally, a challenge to the application of a mandatory minimum sentence is a non-waivable challenge to the legality of the sentence[,]" but argues that an excessiveness challenge does not necessarily implicate "legality" if the appellant fails to characterize the claim as such. The Commonwealth then explains that appellant failed to challenge the fine in his post-sentence motion or in his Concise Statement of Matters Complained of on Appeal "on the basis that it is illegal." On the other hand, the Commonwealth contends, if appellant's claim is deemed to implicate discretionary aspects of his sentence, he failed to properly preserve that claim because he has not included in his brief a concise statement of reasons relied upon for allowance of appeal, as required by Pa.R.A.P. 2119(f), where a discretionary sentencing claim is at issue. Commonwealth's Brief at 15 (citing Brougher, 978 A.2d at 375 (discretionary sentencing challenge waived upon Commonwealth's objection to absence of Rule 2119(f) statement)). Lastly, the Commonwealth argues that appellant waived any constitutional objection by failing to state in express terms the specific constitutional grounds for the claim during his plea hearing. Commonwealth's Brief at 15-17 (citing, *inter alia*, In re F.C. III, 2 A.3d 1201, 1212 (Pa. 2010)).

We begin with the question of whether appellant preserved the constitutional excessive fine claim during his guilty plea hearing. "[I]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). The issue preservation requirement "ensure[s] that the trial court that initially hears a

---

(…continued)
plea agreement. There is no suggestion in the written plea agreement or the in-court discussion and colloquy (summarized above) that appellant's plea included an agreement not to challenge the fine; and indeed, appellant's argument and objection at the plea hearing exclusively addressed the lawfulness of the fine.

dispute has had an opportunity to consider the issue[,]" which in turn "advances the orderly and efficient use of our judicial resources[,]" and provides fairness to the parties. In re F.C. III, 2 A.3d at 1212. Further, "it is incumbent upon one raising the specter that a statute is unconstitutional to state, at least in somewhat express terms, the specific constitutional grounds upon which the challenger is basing its attack on the legislation." Id.

Appellant adequately preserved his excessive fine claim for Rule 302 purposes at the plea hearing. Counsel specifically referenced the Cruel Punishments Clause of Article I, Section 13 of the Pennsylvania Constitution, (as well as the Cruel and Unusual Punishment Clause of the U.S. Constitution, found in the Eighth Amendment). In addition, although the argument was somewhat scattered and not particularly sophisticated, counsel articulated an objection sounding in terms of disproportionality and excessiveness, focusing on the disproportional relationship of the fine compared to the amount stolen, and in comparison to the far lesser fines imposable for related, or far more serious, crimes. Counsel labeled the fine "draconian"; argued that no other theft offense, and indeed no other felony offense, exposed the defendant to such a fine; and claimed that "the fine does not match the act" and "is more than you can impose in any [other] particular case." Also relevant, for issue preservation purposes, is that the trial court plainly understood the gravamen of the claim, noting the disconnection between a theft of $200 and its power under the Gaming Act to impose a fine of $150,000, and its lack of discretion to impose a fine of less than $75,000. In addition, the court conveyed at the outset of its remarks, albeit in oblique terms, that the constitutional issue would ultimately not be resolved in that trial courtroom.[10]

---

[10] The Commonwealth does not argue that appellant's claim is waived because it was insufficiently developed in the optional post-sentence motion he later filed under Criminal Rule 720.

We turn to the Commonwealth's separate argument that appellant's constitutional claim does not implicate the legality of the sentence because he did not so characterize the claim; for that reason, the claim may be construed as implicating the discretionary aspects of sentence, which required appellant to comply with Rule 2119(f) to secure review; and appellant failed to so comply. The question of whether a claim implicates the legality of a sentence can be relevant for a variety of purposes, especially when a guilty plea is involved.

First, upon entry of a guilty plea, a defendant waives all claims and defenses other than those sounding in the jurisdiction of the court, the validity of the plea, and what has been termed the "legality" of the sentence imposed, e.g., Commonwealth v. Jones, 929 A.2d 205, 212 (Pa. 2007); the Commonwealth's argument depends upon this common formulation. Second, the "sentencing legality/sentencing discretion" dichotomy argued by the Commonwealth (including the role of Rule 2119(f) when a discretionary sentencing claim is involved) invokes the distinction in Section 9781 of the Sentencing Code, 42 Pa.C.S. § 9781. Under Section 9781(a), claims implicating the "legality" of a sentence are reviewable as of right on direct appeal, a fact which operates to spare the appellant the petition for review process contemplated by Section 9781 and Rule 2119(f). Third and finally, a determination that a claim implicates the legality of a sentence also operates to revive a claim otherwise insufficiently preserved below. See, e.g., Commonwealth v. Dickson, 918 A.2d 95, 99 (Pa. 2007) ("[I]f the sentence clearly implicates the legality of sentence, whether it was properly preserved below is of no moment, as a challenge to the legality of sentence cannot be waived.").

As we understand the Commonwealth's argument, given appellant's plea, merits review is available on direct appeal only if his excessive fine claim is deemed to implicate the "legality" of the sentence for purposes of both guilty plea survival and

Section 9781.  This Court has noted, in the issue preservation realm, that the question whether a claim implicates the legality of a sentence "presents a pure question of law." Commonwealth v. Foster, 17 A.3d 332, 340 n.13 (Pa. 2011) (Opinion Announcing Judgment of Court by Baer, J.).  It is no less a pure question of law whether a claim implicates sentencing legality for other purposes.

In a number of recent cases where the Court has had occasion to discuss "illegal sentences," there have been a plethora of expressions, but no abiding consensus.  See, e.g., Foster (Court issued four separate, nuanced opinions explaining preferred approach to "illegal sentence" question for issue preservation purposes).  As we have most recently explained:

> This Court's experience with claims allegedly implicating sentencing legality has not always been smooth.  Complexities can arise from the fact that a sentencing legality claim can be offered for a variety of reasons, most commonly to overcome a failure to preserve a sentencing issue by contemporaneous objection at trial, see Pa.R.A.P. 302, or to secure review as of right on direct appeal without having to separately petition for allowance of review.  See 42 Pa.C.S. § 9781.  Complexities also arise from disagreement among the members of the Court concerning whether a particular claim implicates the legality of a sentence.  Over the years, there has been consensus, or solid majority holdings, with respect to certain discrete claims.  The classic instance of an illegal sentence is where the term imposed exceeds the statutory maximum, see Commonwealth v. Shiffler, 583 Pa. 478, 879 A.2d 185, 189 (2005), but there are numerous other instances as well.  See, e.g., Commonwealth v. Vasquez, 560 Pa. 381, 744 A.2d 1280 (2000).  The Superior Court, which addresses sentencing claims on a daily basis in its direct review capacity, has a developed line of decisional law on the question.  See Commonwealth v. Foster, 609 Pa. 502, 17 A.3d 332, 342-44 (2011) (Opinion Announcing Judgment of Court by Baer, J.) (collecting cases).

Commonwealth v. Spruill, 80 A.3d 453, 460-61 (Pa. 2013).  The constitutional claim raised here arises in a guilty plea context, and involves a fine rather than a sentence of imprisonment, two factors distinguishing it from much of the Court's "illegal sentence" jurisprudence.  But, we have no difficulty in finding the claim reviewable.

As a matter of plea survival, we note first that the terms of the negotiated plea agreement, and the record dispute concerning the constitutionality of the mandatory fine, make clear that the agreement did not require appellant to waive any legal challenge he might otherwise be permitted to mount concerning the constitutionality of the fine. And, in this regard, the Commonwealth does not argue that allowing appellant to pursue his purely legal challenge deprives it of the benefit of its guilty plea bargain. Guilty pleas are momentous occasions, of course, and the proper entry of such a plea acts to extinguish virtually all legal challenges that could have been brought upon the trial, or appeal, of the case. When a negotiated plea includes sentencing terms (or, more properly, the Commonwealth's commitment to recommend a certain sentence), the defendant's knowing and voluntary acceptance of those terms rightly extinguishes the ability to challenge a sentence the defendant knew was a proper consequence of his plea.

But, different considerations logically arise if there has been no actual agreement as to sentence (or here, as to the "fine" aspect of the punishment to be imposed). In that circumstance, the defendant's appeal does not deprive the Commonwealth of the benefit of its bargain. Moreover, it would be illogical and wasteful to force defendants, otherwise willing to accept responsibility, waive significant rights, and conserve judicial resources, to proceed to trial merely to preserve a sentencing claim unrelated to guilt or innocence. See generally 5 WAYNE R. LaFAVE ET AL., CRIMINAL PROCEDURE § 21.6(a), at 921 & nn. 79-80 (3d ed. 2007 & Supp. 2013-14) (suggesting general rule that at least when sentence objected to on appeal was not itself part of plea agreement, objections to sentence imposed may be entertained notwithstanding plea) (collecting cases); Commonwealth v. Reed, 374 S.W.3d 298, 300-01 (Ky. 2012) (noting that plea agreements are contracts between government and accused; holding that where plea

agreement permitted defendant to dispute government's request for imposition of $1,000 fine before trial judge, issue was reviewable notwithstanding plea; and ultimately holding that fine imposed was contrary to law) (applying Kentucky law respecting pleas).

Notably, the Superior Court has a line of decisions recognizing that, notwithstanding the rote language that a guilty plea extinguishes all sentencing claims but those implicating legality, in point of fact the calculus is different if the negotiated plea did not encompass a commitment respecting sentencing. Our intermediate court has suggested that even appellate claims implicating purely discretionary aspects of sentencing are available in that instance, subject, of course, to the restrictions in Section 9781 and Rule 2119(f). See, e.g., Commonwealth v. Tirado, 870 A.2d 362, 365 n.5 (Pa. Super. 2005) (collecting cases). For all of these reasons, we hold that appellant's otherwise-preserved challenge to the mandatory fine, whether deemed to implicate sentencing "legality" or not, was not extinguished for appeal purposes, as a matter of law, merely because he entered a guilty plea.

But, we must still contend with sentencing "legality" because of the dichotomy in Section 9781. Appellant's fines challenge obviously does not implicate the lower court's discretionary act: the trial court's only discretion was to choose a dollar figure between $75,000 and $150,000, and appellant's complaint is that the statute is unconstitutional to the extent it afforded no discretion to impose a lesser fine than $75,000. Moreover, appellant's claim is not that there was some error by the trial court raising a substantial question that the sentence imposed was inappropriate under the Sentencing Code. See 42 Pa.C.S. § 9781(b) (allowance of appeal) ("Allowance of appeal may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentence imposed is not appropriate under this chapter."). The claim is that the fine required by the Gaming Act was unconstitutional. In this case,

particularly since we are not presented with the more common and divisive circumstance of "illegality-claimed-to-overcome-waiver-below," we have no difficulty in concluding that appellant's challenge implicates illegality as conceived in Section 9781.

This conclusion aligns with our holding in somewhat analogous circumstances. In Commonwealth v. Shiffler, 879 A.2d 185 (Pa. 2005), the appellant pleaded guilty to burglary and several other offenses, and was sentenced to a twenty-five year mandatory minimum term of imprisonment as a third-time offender under the "three strikes law," 42 Pa.C.S. § 9714. On appeal, he claimed that the lower courts erred in interpreting Section 9714, arguing that he was instead a two-strike offender. The Shiffler Court found that the claim implicated the legality of the sentence because, "in the absence of the twenty-five year mandatory minimum sentence provided for in Section 9714(a)(2), appellant would have been exposed to a maximum sentence of only twenty years of imprisonment for the burglary conviction. If the three strikes provision were deemed inapplicable, appellant's sentence would exceed the lawful maximum, and hence, would be deemed illegal." 879 A.2d at 189 (citation and footnote omitted). In this appeal, if the Court were to find that the mandatory fine dictated by Section 1518(b)(2) of the Gaming Act is constitutionally excessive, the non-discretionary fine imposed would be illegal.

In sum, we hold that appellant's claim, challenging the Gaming Act's mandatory fine on grounds that it is unconstitutionally excessive under Article I, Section 13, implicates the legality of the sentence for purposes of Section 9781. Cf. In re M.W., 725 A.2d 729, 731 (Pa. 1999) (claim by juvenile concerning lower court's authority to order restitution implicates legality of dispositional order and not exercise of discretion; adverting generally to court's power to review issues respecting lawfulness of sentences; and further noting that Section 9781(f)'s restriction concerning sentencing

appeals as of right does not preclude review of legal principles (citing Commonwealth v. Smith, 673 A.2d 893, 895 (Pa. 1996)).[11]

## III. The Merits

## A. Arguments

Appellant claims that the mandatory $75,000 fine imposed here violates the Pennsylvania Constitution's prohibition on excessive fines, arguing that the amount of the fine is grossly disproportionate to the severity of his offense -- a theft of $200. Appellant asserts that this fine, which is 375 times greater than the amount he stole from his employer, should be deemed excessive in light of the relatively *de minimis* nature of the violation. Appellant's Brief at 10 (citing Commonwealth v. Heggenstaller, 699 A.2d 767 (Pa. Super. 1997) (imposition of $6,550 fine for failure to pay $28.75 in 911 fees deemed excessive)). Appellant also argues that the mandatory minimum fine makes no measurable contribution to the goals of punishment and that it is irrational and unreasonable. Id. at 10-11 (citing Commonwealth v. Gipple, 613 A.2d 600, 602 (Pa. Super. 1992) and Commonwealth v. Strunk, 582 A.2d 1326, 1328 (Pa. Super. 1990)). Appellant adds that the mandatory fine is "grossly out of proportion to the fines associated with heinous crimes like Murder, Rape, and Arson." Id. at 11. Responding to the notion that the fine should be deemed appropriate as a deterrent, appellant points

---

[11] The OAJC in Foster opined that, "where a sentencing court is required to impose a mandatory minimum sentence, and that mandatory minimum sentence affects a trial court's traditional sentencing authority or the General Assembly's intent in fashioning punishment for criminal conduct, a defendant's challenge thereto sounds in legality of sentence is therefore nonwaivable." Foster, 17 A.3d at 345. Although that expression did not garner majority support in a case where the question was issue preservation, the description seems an apt one for purposes of the Section 9781 distinction.

out that all fines can be so described, and yet the constitutional protection against excessive fines persists.  Appellant's Brief at 8-9.

The Commonwealth responds that appellant's reliance on Heggenstaller is misplaced, since that case involved a penalty set by local ordinance, while this mandatory fine was established by a statewide statutory scheme governing legalized gaming.  More generally, the Commonwealth contends that the General Assembly's decision to require such a substantial mandatory fine for a first theft offense under the Gaming Act is neither irrational nor unreasonable under Gipple.  This is so, the Commonwealth argues, because the primary purpose of the fine is to protect the public by punishing and deterring criminal behavior that would undermine public confidence in the gaming industry.  Commonwealth's Brief at 26 (citing 4 Pa.C.S. § 1102(1)).  The Commonwealth notes that Pennsylvania appellate courts have repeatedly upheld substantial fines citing to the General Assembly's valid objectives of punishment and deterrence.  Id. at 20-24 (citing Eckhart v. Dep't of Agriculture, 8 A.3d 401 (Pa. Cmwlth. 2010) (roughly $15,000 in administrative penalties which arose from thirty violations regarding dog kennel operation not excessive in light of prior infractions); Commonwealth v. CSX Transp., Inc., 653 A.2d 1327 (Pa. Cmwlth. 1995) ($100,000 fine appropriate and not excessive where $10.00 statutory penalty for each fish killed by effluent discharge was intended to protect fisheries and wildlife); and Commonwealth v. Church, 522 A.2d 30 (Pa. 1987) ($13,000 fine not excessive where statutory scheme penalized overweight vehicles on sliding scale without regard for ability to pay or cost to Commonwealth of noncompliance)).  Finally, the Commonwealth asserts that appellant's comparison of the fine here with fines imposable for general theft offenses and other crimes is unavailing because the Legislature was concerned with upholding public confidence in an industry through which a vast amount of money is exchanged.

The Commonwealth then adds that "[i]t is the policy of the law not to permit prosecutions under the general provisions of the penal code when there are applicable special provisions available." Id. at 27 (citing Commonwealth v. Leber, 802 A.2d 648, 650 (Pa. Super. 2002)).

The trial court found that the General Assembly had the discretion to require such a minimum fine, which the court was then bound to apply absent further guidance by the appellate courts. The trial court also dismissed appellant's reliance on the Heggenstaller case, noting the distinction between a local ordinance and "an act of our Legislature." Trial Ct. Op. at 4-5.

## B. The Excessive Fines Clause

As a starting point, we note that the Commonwealth does not dispute that the fine imposed here is a penalty, and therefore an Article I, Section 13 claim is cognizable. The remaining question is whether the mandatory fine is excessive. See Commonwealth v. 5444 Spruce St., 832 A.2d 396, 399 (Pa. 2003).[12] Whether a fine is excessive under our Constitution is a question of law, therefore our standard of review is *de novo* and our scope of review is plenary. See Commonwealth v. Baker, 78 A.3d 1044, 1047 & n.3 (Pa. 2013).

The constitutional provision at issue is both brief and plain: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." By its

---

[12] The Commonwealth also acknowledges that prior decisions have stated that the Pennsylvania prohibition against excessive fines is co-extensive with the Eighth Amendment, see 5444 Spruce St., 832 A.2d at 399, and thus, appellant was not required to support his state constitutional claim in conformance with Commonwealth v. Edmunds, 586 A.2d 887 (Pa. 1991) (suggesting briefing and analysis of several factors regarding claims alleging the distinctiveness of a Pennsylvania constitutional provision which has a federal analog).

plain language, the middle clause employs a concept of proportionality; the difficulty is articulating a principle by which to measure excessiveness or proportionality.

Pennsylvania's prohibition against excessive fines dates back to the Constitution of 1776. A convention of representatives under the chairmanship of Benjamin Franklin began drafting the Pennsylvania Constitution less than two weeks after the colonies declared their independence from Great Britain.[13] Section 29 of the 1776 Pennsylvania Constitution provided: "Excessive bail shall not be exacted for bailable offences: And all fines shall be moderate." PA. CONST. of 1776, Plan or Frame of Gov't, § 29. Eleven years later, in September 1787, following the successful conclusion of the Revolutionary War, and in response to perceived failures in the Articles of Confederation, the U.S. Constitution was drafted and submitted to the states for approval. On December 12, 1787, Pennsylvania delegates ratified the U.S. Constitution, but that document did not contain any such protection against excessive federal fines. In response to ratification of the U.S. Constitution, Pennsylvania's anti-federalist delegates penned "*The Address and reasons of dissent of the minority of the convention, of the state of Pennsylvania, to their constituents*" in which they explained that they had offered several proposed amendments, including adding a provision: "That excessive bail ought not to be required, nor excessive fines imposed nor cruel nor unusual punishments inflicted."[14] It has been suggested that "[t]he amendments thus unofficially offered were the

---

[13] "This constitution was framed by a convention (called in accordance with the expressed wish of the Continental Congress) which assembled at Philadelphia July 15, 1776, and completed its labors September 28, 1776." PA. CONST. of 1776 (epilogue).

[14] This language mirrors a provision of the English Bill of Rights of 1689 created following the reign of King James II, who, the drafters claimed, "by the assistance of divers evil counsellors, judges and ministers employed by him, did endeavour to subvert and extirpate the Protestant religion and the laws and liberties of [the] kingdom[.]" See English Bill of Rights of 1689.

forerunners of those of Massachusetts and Virginia, and undoubtedly formed the basis of what Mr. Madison laid before the House of Representatives in 1789" – a reference to what would become the Bill of Rights.  HISTORICAL SOCIETY OF PENNSYLVANIA, PENNSYLVANIA AND THE FEDERAL CONSTITUTION, 1787-1788 (1888).

Meanwhile, Pennsylvania held a second state constitutional convention, adopting in 1790 the above wording of the excessive fines clause, which is nearly identical to its current form.  See PA. CONST. of 1790 art. IX, § 13.[15]  A coordinate prohibition against excessive fines was eventually enshrined in the Eighth Amendment of the U.S. Constitution and adopted along with the other federal Bill of Rights on December 15, 1791.

This Court has rarely had occasion to interpret the excessive fines proscription, and many of the cases which did interpret the term lack developed reasoning.  See Respublica v. Donagan, 2 Yeates 437 (Pa. 1799) ($10,000 bond after and despite acquittal did not violate excessive fines clause because trial court acted within its discretion and "[u]nsafe would the community be, if such characters could prowl at large through the country, without a sufficient tie on them."); Mastrangelo v. Buckley, 250 A.2d 447, 464 (Pa. 1969) (finding, *sua sponte* and without elaboration, that $6.00 fine for parking violation not excessive); Commonwealth v. Smith, 187 A.2d 267 (Pa. 1963) (graduated fines for overweight vehicles not irrational or unreasonable, and therefore not excessive).[16]

---

[15] The provision was later moved to its current location in Article I (formerly the plan of government for the legislative branch), which became home to the Declaration of Rights in the Pennsylvania Constitution of 1874.  See PA. CONST. of 1874 art. I, § 13.

[16] The federal analog also lay effectively dormant for nearly two centuries.  See Beth A. Colgan, *Reviving the Excessive Fines Clause*, 102 CAL. L. REV. 277, 297 (2014) ("Though the Excessive Fines Clause was ratified in 1791, nearly two centuries passed (continued…)

In the mid-1990s, this Court began to more critically analyze the Excessive Fines Clause in the context of forfeiture matters; in those cases, we followed the lead of the U.S. Supreme Court's interpretation of the federal clause in <u>Austin v. United States</u>, 509 U.S. 602 (1993) and <u>United States v. Bajakajian</u>, 524 U.S. 321 (1998). <u>See</u>, <u>e.g.</u>, <u>5444 Spruce St.</u>, 832 A.2d at 402-03; <u>Commonwealth v. Wingait Farms</u>, 690 A.2d 222, 225-27 (Pa. 1997); <u>In re King Properties</u>, 635 A.2d 128, 131-33 & n.10 (Pa. 1993) (explaining Excessive Fines Clause in relation to forfeiture matters) (relying on <u>Austin</u>, 509 U.S. at 623-28 (Scalia, J., concurring)).[17] In <u>Bajakajian</u>, the High Court reiterated that "at the time the Constitution was adopted, the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense. The Excessive Fines Clause thus limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." 524 U.S. at 327-28 (quoting <u>Austin</u>; <u>Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.</u>, 492 U.S. 257, 265 (1989)) (some quotation marks omitted). Without a viable test apparent from the plain text or history of the Clause, the High Court found precedent regarding the companion Cruel and Unusual Punishment Clause to be relevant, and ultimately adopted a standard whereby a fine "violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." <u>Bajakajian</u> at 334-36 (citing, *inter alia*, <u>Solem v. Helm</u>, 463 U.S. 277, 290 (1983) (involving challenge raised under Cruel and Unusual Punishment Clause)).

---

(…continued)
before the [United States] Supreme Court undertook its first meaningful foray into analyzing the Clause.").

[17] That much of the existing decisional law in this area involves forfeiture matters does not diminish its relevance, as the cases required a predicate finding that a punitive forfeiture is a fine under the meaning of the excessive fines clauses. <u>See Bajakajian</u>, 524 U.S. at 344; <u>5444 Spruce St.</u>, 832 A.2d at 399.

With respect to the Excessive Fines Clause under Article I, Section 13, this Court has looked to the gross disproportionality standard from Bajakajian, which includes a threshold comparison between the amount of the fine and the gravity of the offense triggering the fine. See 5444 Spruce St., 832 A.2d at 398-403 (remanding for trial court to determine value of subject property and weigh against seriousness of offense). Notably, in determining whether a fine is so excessive as to constitute a deprivation of property without due process of law, this Court and the Commonwealth Court have rejected the notion that there must be strict proportionality between the harm resulting from the offense and the penalty imposed. Church, 522 A.2d at 34 ("[T]he amount of a fine need not be limited to the cost incurred by the Commonwealth for each violation."); CSX Transp., Inc., 653 A.2d at 1332 (same).

Bajakajian and 5444 Spruce Street teach that a proportionality analysis requires a comparison of the amount of the fine to the gravity of the offense; but, the additional factors employed in those cases to evaluate excessiveness (e.g., how the forfeiture compares with the maximum criminal penalty imposable for the offense) are of little use here, where the challenge involves a **mandatory** fine/penalty. The next logical place to seek practical guidance is from cases arising under the companion clauses under which the excessive fines jurisprudence developed (i.e., federal or state cruel punishments clauses, due process clauses, or the federal excessive fines clause). And, in fact, this Court's recent decision in Commonwealth v. Baker, 78 A.3d 1044 (Pa. 2013), a case involving a challenge to a mandatory sentence as cruel (and unusual) affords some guidance.

In Baker, the appellant challenged as constitutionally disproportionate the imposition of a mandatory minimum sentence of 25 years for his second conviction of possessing child pornography. Baker's disproportion claim adverted to both the Eighth

Amendment's "cruel and unusual punishments" clause as well as the "cruel punishments" proscription found in Article I, Section 13 of the Pennsylvania Constitution. The Baker Court noted at the outset that we were not necessarily holding that the approach to such a claim should be coterminous under the federal and state charters, but that we would analyze the claim "purely under the federal standard" because the appellant deemed that standard to be controlling and did not provide a distinct argument under the Pennsylvania Constitution. 78 A.3d at 1048 & n.5; accord id. at 1053 (Castille, C.J., concurring, joined by Saylor & Todd, JJ.). In rejecting the claim on the merits, the Court explained that the federal proportionality test, which derives from Solem v. Helm, examines: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." 78 A.3d at 1047 (quoting Solem, 463 U.S. at 292). Ultimately, the Court did not reach the latter two Solem prongs because the threshold comparison of the sentence imposed and the gravity of the offense did not yield an inference of gross disproportionality. Id. at 1047-48, 1052 (citing Harmelin v. Michigan, 501 U.S. 957, 1005 (1991) (controlling opinion by Justice Kennedy).[18]

---

[18] Justice Scalia wrote the lead Opinion in Harmelin, which was joined by Chief Justice William Rehnquist, taking the position that the Eighth Amendment has no proportionality guarantee, and so Solem v. Helm should be overruled. Justice Kennedy wrote a Concurring Opinion (joined by Justices O'Conner & Souter) that acknowledged a narrow proportionality principle. 501 U.S. at 996-1009 (noting that "intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality"). In a later decision, Graham v. Florida, 560 U.S. 48 (2010), the High Court followed Justice Kennedy's view:

> The controlling opinion in Harmelin explained its approach
> for determining whether a sentence for a term of years is
> grossly disproportionate for a particular defendant's crime. A

(continued…)

Notably, this author filed a Concurring Opinion in <u>Baker</u>, which represented the views of three of the six participating Justices. The concurrence joined the Court's Eighth Amendment analysis, but went on to note that the proper approach to a proportionality claim sounding in the Pennsylvania Constitution might not follow federal law lockstep:

> There is a colorable claim to be made that the federal test for gross disproportionality should not be followed lockstep in Pennsylvania, certainly at least insofar as it includes a federalism-based constraint that looks to sentences for similar offenses in other states. . . . [A] defendant pursuing a Pennsylvania sentencing disproportionality claim may allege that comparative and proportional justice is an imperative within Pennsylvania's own borders, to be measured by Pennsylvania's comparative punishment scheme. In that circumstance, it may be that the existing Eighth Amendment approach does not sufficiently vindicate the state constitutional value at issue, where sentencing proportionality is at issue.

<u>Id.</u> at 1055 (Castille, C.J., concurring, joined by Saylor and Todd, JJ.). The parties did not have the benefit of <u>Baker</u> at the time they briefed and argued this matter. However, it is notable that much of appellant's disproportionality argument turns on comparisons

---

(…continued)

> court must begin by comparing the gravity of the offense and the severity of the sentence. 501 U.S., at 1005, 111 S. Ct. 2680 (opinion of KENNEDY, J.). "[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. <u>Ibid</u>. If this comparative analysis "validate[s] an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual. <u>Ibid</u>.

<u>Id.</u> at 60.

between the mandatory fine imposed in his matter and the fines imposable for other crimes in Pennsylvania, including more serious crimes. We believe this intra-Pennsylvania approach is particularly persuasive in this case. With these background observations in mind, we turn to the constitutionality of the statutory fines construct at issue.

## C. Analysis

Preliminarily, we recognize that "acts passed by the General Assembly are strongly presumed to be constitutional . . . . Accordingly, a statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution. If there is any doubt that a challenger has failed to reach this high burden, then that doubt must be resolved in favor of finding the statute constitutional." Pa. State Ass'n of Jury Comm'rs v. Commonwealth, 64 A.3d 611, 618 (Pa. 2013) (internal citations and quotation marks omitted). It is also settled "that the legislature has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes. The legislature also has the sole power to classify crimes. . . ." Church, 522 A.2d at 35. Moreover, "[t]here is no constitutional requirement prohibiting the legislature from imposing a mandatory sentence where, in its judgment, such a sentence is necessary." Id. at 34 (citing Commonwealth v. Wright, 494 A.2d 354 (Pa. 1985) (upholding Section 9712 of the Mandatory Minimum Sentencing Act, 42 Pa.C.S. § 9712)). With specific respect to fines, this Court has emphasized that:

> [T]he primary purpose of a fine or a penalty is twofold[:] to punish violators and to deter future or continued violations. Since it serves not only as a punishment but also as a deterrent, the amount of the fine can be raised to whatever sum is necessary to discourage future or continued violations, subject, of course, to any restriction imposed on the amount of the fine by the enabling statute or the Constitution.

Id. (quoting Mastrangelo, 250 A.2d at 464).

The Gaming Act was signed into law on July 5, 2004. The stated goal was to protect the public through comprehensive regulation of the gaming industry. 4 Pa.C.S. § 1102 ("The primary objective of this part to which all other objectives and purposes are secondary is to protect the public through the regulation and policing of all activities involving gaming and practices that continue to be unlawful.").

At the time of its enactment, the Gaming Act delineated thirteen criminal acts, twelve of which were subject to a $75,000 mandatory minimum fine for a first offense. See 4 Pa.C.S. § 1518(a)-(b) (2004) (subsequently amended). The criminal offenses subject to the fine included: (1) perjury or false swearing vis-à-vis information required under the Act; (2) failure to pay a licensing fee or tax assessment; (3) operation of slot machines by unlicensed persons; (4) supplying slot machines to a gaming facility without authority from the Gaming Board; (5) operating a slot machine after expiration of a license and prior to license renewal; (6) using counterfeit currency; (7) using a cheating device or counterfeit billet or token; (8) unauthorized persons possessing or using while on gaming premises a key or device suitable for opening any slot machine or coin box; (9) possessing any device made, sold, or tampered with in violation of the Act; (10) working in a casino without a license required for the position; (11) gaming entities operating slot machines at a racetrack while the racetrack license is suspended; (12) and employing unlicensed or unpermitted persons. Id. §§ 1518(a)(1) - (a)(12). The thirteenth provision prohibited persons under 18 years of age "in the area where slot machines are operated," and carried no specific fine. Id. §§ 1518(a)(13) & 1518(b).

On January 7, 2010, the General Assembly amended the Gaming Act primarily to authorize and regulate table games, but also to address additional concerns regarding the industry. As part of this legislation, four additional prohibited acts were added to

Section 1518(a): the theft offense at issue here; prohibiting persons under 21 years of age from entering casinos and playing table games and slot machines; prohibiting gaming facilities from requiring wagers outside the stated minimum and maximum wagers; and prohibiting underage purchase and consumption of alcohol. See Act of January 7, 2010 (P.L. 1, No.1). Of the four newly prohibited acts, only the theft offense was added to Section 1518(b)(2), thus requiring imposition of a mandatory minimum fine of $75,000. The remaining offenses authorize the imposition of fines ranging from $200 to $1,000 for first time offenders, and include some mandatory provisions. See, e.g., 4 Pa.C.S. § 1518(b)(3) (requiring, for first violation of subsection (13) and (13.1) regarding persons under age in casino or operating machines, imposition of fine not less than $200 nor more than $1,000; optional imposition of community service not to exceed forty hours), and 4 Pa.C.S. § 1518(b)(4) (requiring, for underage drinking offense under subsection (a)(16), restriction of vehicle operating privileges pursuant to 18 Pa.C.S. §§ 6308 and 6310.4, and fine imposed "shall be not less than $350 nor more than $1,000").[19]

Mandatory fines are not unheard of in Pennsylvania's statutory scheme, but they are unusual. Appellant logically adverts to the fines construct in the Crimes Code, which governs the vast majority of Pennsylvania criminal cases, including non-Gaming Act theft offenses. The Crimes Code generally reposes a considerable amount of discretion in the sentencing judge. Typically, the court is authorized to impose a fine up to a maximum set by statute. Thus, for example, if appellant had been charged with theft under Chapter 39 of the Crimes Code, he would have faced the prospect of a fine

---

[19] Although the Gaming Act does not establish a specific fine with regard to the violation of wager limits, that prohibition strictly targets the licensed gaming facilities; a violation would leave the facilities open to board-imposed administrative sanctions. See 4 Pa.C.S. § 1518(c).

up to $10,000, in the discretion of the trial judge.  See 18 Pa.C.S. §§ 3903 & 1101(4).

Indeed, as appellant notes, even the most serious of offenses in Pennsylvania, murder

in the first degree, affords the sentencing court discretion in determining the appropriate

fine, and the maximum fine imposable is $50,000.  18 Pa.C.S. § 1101(1).  The same

general construct is found with respect to drug offenses, which are set forth in Title 35.

See 35 P.S. § 780-113 (subsection (a) enumerates thirty-nine prohibited acts related to

various narcotics; subsections (b) through (o) grade each of thirty-nine offenses and

directs court to impose fines "not exceeding" certain amounts).

On the other hand, there are indeed some offenses where the General Assembly

has determined that mandatory fines are appropriate.  For example, in the realm of drug

trafficking, Section 7508(a)(3)(iii) of Title 18 requires that when a person is convicted of

possessing at least 100 grams of cocaine, the court must impose, at a minimum, "four

years in prison and a fine of $25,000 or such larger amount as is sufficient to exhaust

the assets utilized in and the proceeds from the illegal activity[.]"  18 Pa.C.S. §

7508(a)(3)(iii).  Notably, the qualifier "as is sufficient to exhaust the assets" employed in

Section 7508 reflects a proportionality approach (at least insofar as the fine will exceed

$25,000), that is not present in the provision subject to challenge in the case *sub*

*judice*.[20]

---

[20] As the trial court noted, this Court accepted review of a disproportionality challenge to
Section 7508 in Commonwealth v. Carela-Tolentino. Ultimately, the Court entered a
summary, *per curiam* affirmance.  See 48 A.3d 1221. This author filed a Dissenting
Statement, which concluded as follows:

> The language of Section 7508 regarding how fines above the minimum
> are to be assessed, combined with constitutional concerns focusing on
> reasonability, rationality, and proportionality, as demonstrated by the more
> nuanced approach of forfeiture cases like Bajakajian and 5444 Spruce
> Street, would restore discretion to sentencing courts -- the entities best
> suited to determine how the goals of punishment, deterrence, and

(continued…)

In our view, the fine here, when measured against the conduct triggering the punishment, and the lack of discretion afforded the trial court, is constitutionally excessive. Simply put, appellant, who had no prior record, stole $200 from his employer, which happened to be a casino. There was no violence involved; there was apparently no grand scheme involved to defraud either the casino or its patrons. Employee thefts are unfortunately common; as noted, appellant's conduct, if charged under the Crimes Code, exposed him to a maximum possible fine of $10,000. Instead, because appellant's theft occurred at a casino, the trial court had no discretion, under the Gaming Act, but to impose a minimum fine of $75,000 – an amount that was 375 times the amount of the theft.

In addition to the sheer disproportion of the fine to the amount stolen is the fact that $75,000, by any common measure, is a considerable amount of money. As illustration, the minimum wage in Pennsylvania is currently $7.25 per hour, and the average Pennsylvania household earns approximately $51,000 per year.[21] The fine imposed here would exhaust approximately five years of pre-tax income of a minimum wage worker, and the average family would not fare much better. In other words, the mandatory nature of the provision could act to effectively pauperize a defendant for a

_____

(…continued)
> depletion of illegal gains should be achieved in a given case. This would ensure that punishment is just, but not excessive. By contrast . . . mechanical imposition of mandatory minimums, as applied in cases like appellant's, can result in violation of constitutional prohibitions against excessive fines.

Carela-Tolentino, 48 A.3d at 1229 (*per curiam*) (Castille, C.J., dissenting, joined by Todd, J.).

[21] U.S. CENSUS BUREAU, Three-Year-Average Median Household Income by State: 2010 to 2012, *available at* http://www.census.gov/hhes/www/income/data/statemedian/index.html (page last revised September 19, 2013).

single act. It is not a measure targeted solely at high rollers, at the casino itself, or even at thefts from patrons, which might implicate the integrity of the gaming business. Rather, the statute affords the trial court no discretion to inquire into the specific facts or the individual circumstances of a case, which, in this instance, happens to include a twenty-six year old defendant with no prior record who was, at the time of sentencing, enrolled full-time as a student, living with his fiancée, expecting his first child, and did not own a house.[22]

The Commonwealth argues that the mandatory fine is not constitutionally excessive because a fine serves both to punish and to deter, and in the Legislature's judgment, the amount here was necessary to accomplish both in light of the public perception of the gaming industry and the significant amount of money exchanged in casinos. We acknowledge that all fines serve the twin purposes of punishment and deterrence. At the same time, however, we note that the extension of the mandatory fine to this offense was adopted in 2010, and it was accompanied by no separate legislative statement of purpose. The only statement of purpose is that attending the initial Gaming Act legislation, *i.e.*, the general statement of purpose to protect the public through regulation of the gaming industry. The Commonwealth cites nothing in the later legislation, its legislative history, or logic to explain the sheer amount of this fine for this particular added offense, and the reason for making the offense subject to a mandatory fine.[23]

---

[22] We acknowledge this Court's statement in <u>Church</u> that "[t]here is no constitutional requirement that invalidates the imposition of an otherwise valid fine merely because a defendant lacks the immediate ability to pay it[.]" 522 A.2d at 33. We stress appellant's individual circumstances only as illustrative of the broader difficulty we see in the nature of a mandatory fine of this size, measured against the offense at issue.

[23] <u>Cf.</u> <u>Carela-Tolentino</u>, 48 A.3d at 1225 & n.4 (Castille, C.J., dissenting) (Commonwealth Court "did not explain how it determined that the one-size-fits-all (continued…)

Furthermore, the statement of purpose accompanying the original Gaming Act does not logically embrace the extension of the hefty mandatory fine to the theft offense at issue here. The original twelve offenses deemed subject to the mandatory fine all involved conduct that went directly to the integrity of the fledgling industry, an industry that naturally raises concerns about associated criminal activity. Thus, for example, the General Assembly attempted to ensure that each entity seeking a gambling license was forthcoming on its application, that only properly licensed entities could operate slot machines, and that all participants refrained from cheating or counterfeiting. Even those provisions involving persons other than industry employees, principals, or insiders implicated obvious concerns of industry integrity. To be sure, there can be thefts (though perhaps not of $200) in a casino setting that might implicate core concerns with gaming integrity. But, the statute admits of no nuance. In our judgment, an employee theft of $200, as at issue here, does not implicate the identified industry concern. The Gaming Act establishes the same fine structure whether a casino itself perpetrates a fraud against the Gaming Control Board, or an individual commits a theft of any amount on the casino's property. Compare, e.g., 4 Pa.C.S. §§ 1518(a)(1) (Chapter 49 of Title 18 related to perjury, false swearing, and unsworn falsification to authorities "shall apply to any person providing information or making any statement, whether written or oral, to the board, the bureau, the department, the Pennsylvania State Police or the Office of Attorney General, as required by this part."), and 1518(a)(2) ("It shall be unlawful for a person to willfully: (i) fail to report, pay or truthfully account for and pay over any license

---

(…continued)
mandatory minimum fine required by Section 7508 reflected the actual 'price' that drug offenders 'cost society,' and the equivalence is decidedly not self-evident.").

fee, authorization fee, tax or assessment imposed under this part; or (ii) attempt in any manner to evade or defeat any license fee, authorization fee, tax or assessment imposed under this part."). On its face, the mandatory fine provision when adopted seemed calculated to deter abuses by industry players who generate or manage millions of dollars. By lumping the entire spectrum of theft offenses under a scheme apparently focused on deterring instances of theft that impugn the integrity of the industry, the General Assembly appears to have lost sight of the constitutional limitation on excessive fines.

A comparison of the mandatory fine imposed for the offense here with the fines imposable for other criminal offenses, a factor akin to the second Solem prong, confirms our finding of constitutional excessiveness. We need not conduct an encyclopedic review of the fine schemes for criminal offenses in Pennsylvania to make the point. It is enough to note that, under the Crimes Code, the maximum fine imposable for any crime is $50,000 (that, for a conviction of murder or attempted murder, but still within the trial judge's discretion), and the maximum fine imposable for Crimes Code equivalents of appellant's offense -- a first-degree misdemeanor -- is $10,000. See 18 Pa.C.S. § 1101(1), (4). The fine at issue here, both in an absolute sense and in a comparative sense, is strikingly disproportionate to the manner in which other crimes are punished in Pennsylvania. That the fine is mandatory merely exacerbates the disproportion.

Finally, the Commonwealth's reliance on cases in which courts have upheld substantial criminal administrative penalties in light of the Legislature's dual objectives of punishment and deterrence, is misplaced. In those cases, the fines were tailored, scaled, and in the strictest sense, calculated to their offenses.[24] It is undoubtedly within

---

[24] In Church, overweight vehicles were fined on a sliding scale **per pound** over the weight limit. In Eckhart, the appellant kennel operator had committed numerous (continued…)

the Legislature's discretion to categorize theft from a casino differently than other theft crimes in Pennsylvania, and, in turn, to fashion different penalties. However, the prohibition against excessive fines under Article I, Section 13 requires that the Legislature not lose sight of the fact that fines must be reasonably proportionate to the crimes which occasion them. We hold that, as imposed here, the mandatory fine clearly, palpably and plainly violates the Pennsylvania Constitution.

### III. Conclusion

For these reasons, we find the mandatory fine imposed here to be unconstitutional. Accordingly, we vacate that portion of the judgment of sentence involving imposition of the mandatory fine, and we remand to the trial court to determine, in its discretion, the appropriate fine to be imposed commensurate with appellant's offense. Jurisdiction is relinquished.


Former Justice Orie Melvin did not participate in the consideration or decision of this case.

---

(…continued)

infractions incurring a fine amount in excess of $150,000 based on a $100-$500 **per dog/per day** penalty scheme, $15,000 of which appellant claimed was excessive in light of perceived triviality of the offense. In CSX, the appellant's train car leaked enough corn syrup into the Youghiogheny River to kill approximately 10,000 fish, and thus appellant incurred a roughly $100,000 fine, based on a $10 **per fish** calculation.

It is also worth noting that the fine scheme at issue in Carela-Tolentino, to the extent it authorized fines **exceeding** $25,000, included a limiting principle that it only be large enough "as is sufficient to exhaust the assets utilized in and the proceeds from the illegal activity[.]" 18 Pa.C.S. § 7508(a)(3)(iii). No such limitation exists under the Gaming Act's mandatory fines provision.

Messrs. Justice Saylor, Eakin and Baer, Madame Justice Todd and Mr. Justice McCaffery join the opinion.