IN THE COMMONWEALTH COURT OF PENNSYLVANIA

JPR Holdings, LLC,          :
               Appellant   :
                    :
      v.               :   No. 820 C.D. 2019
                    :   Argued:  November 12, 2020
City of Philadelphia      :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE J. ANDREW CROMPTON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CROMPTON              FILED:  January 8, 2021

Before this Court is the appeal of JPR Holdings, LLC (JPR) from a February 26, 2019 order (Order) of the Court of Common Pleas of Philadelphia County (trial court), assessing a total of $52,000 in fines against JPR for violations of The Philadelphia Code (Code)[1] relative to making renovations without valid permits at 2113 East Cambria Street, Philadelphia, Pennsylvania (Property).

## I.    Background and Procedural History

The City of Philadelphia (City) filed an action against JPR in August 2017, as a result of a February 2017 inspection by the Philadelphia Department of Licenses and Inspections (L&I), which revealed building code violations relative to

---

[1] Phila., Pa., The Philadelphia Code tit. 4 (The Phila. Building Constr. & Occupancy Code), ch. 4-200.0, subcode "A" (The Phila. Admin. Code), chs. 3, 5, 9, §§A-301.1.1(3), A-301.1.3, A-304.1.4, A-504.1, A-901.13 (2020).

renovations being conducted on the Property without required permits. On February 8, 2017, L&I issued a Stop Work Order and Initial Notice of Violation and Order (Notice) for five violations, which included "a complete gut renovation and unpermitted electrical and plumbing work."[2]  City's Br. at 5 (citing R.R. at 14-16).[3] Said Notice stated that fines of $150 to $2,000, per day, could be imposed while the violations remain uncorrected and noted that JPR had 30 days to file an administrative appeal.  In addition, L&I posted a Stop Work Order on the Property. City's Br. at 5-6.

One month later, L&I conducted another inspection and found that the violations continued.  R.R. at 18-19.  The City filed an enforcement action on August 31, 2017, but the matter was continued several times while the City attempted to effectuate service on JPR.  City's Br. at 6.  After a hearing in June 2018, the trial court ordered JPR to obtain all the required permits and issued a $7,000 conditional

---

[2] In its Notice, the City cited Sections A-301.1.1(3), A-301.1.3, A-301.1.4, A-504.1, and A-901.13 of the Code, noting that JPR needed a building permit (1) to install floor trusses, (2) to alter, modify, repair or improve the interior portion of the Property, (3) to install, alter, replace or repair electrical and communication wiring within or on any structure or premises, (4) to alter, repair or replace plumbing in a structure, and (5) to install or replace a stairway.  The City stated that it was issuing a Stop Work Order because the Property was found to be "in a dangerous or unsafe condition . . . likely to cause imminent injury to persons or property" and noting that permit and inspection fees would be imposed.  Reproduced Record (R.R.) at 14-15.

[3] Pa.R.A.P. 2173 states, in pertinent part, as follows:

[e]xcept as provided in Rule 2174 (tables of contents and citations), the pages of briefs, the reproduced record and any supplemental reproduced record shall be numbered separately in Arabic figures and not in Roman numerals: thus 1, 2, 3, *etc.*, followed in the reproduced record by a small a, thus 1a, 2a, 3a, *etc.*, and followed in any supplemental reproduced record by a small b, thus 1b, 2b, 3b, *etc.*

We note that the reproduced record, herein, does not follow the above rule.

fine, which was to be made final if JPR did not comply by August 13, 2018. R.R. at 25-26. The trial court also noted that the violations at the Property were subject to a daily fine of $3,500, *i.e.*, $300 per each of five violations, and $2,000 for violation of PM-110.1.[4]

At a second hearing on August 14, 2018, the trial court determined that JPR had not remedied the Code violations. However, JPR was given another 45 days to comply before the conditional fine would become final. R.R. at 28-31.

At a third hearing in October 2018, the trial court determined that JPR had not made any substantive progress in remedying the violations but declined to impose any absolute fines, imposing a conditional fine of $15,000 instead and warning that it would make the fine absolute if JPR did not remedy the violations by the date of the next hearing. R.R. at 46-48.

At a hearing on December 18, 2018, the trial court (1) found JPR had not remediated the Code violations, (2) noted the violations at the Property were subject to a daily fine of $1,500, (3) converted, from conditional to absolute, $10,000 of the $15,000 in fines, (4) ordered JPR to remedy the violations in 30 days from the date of the order, and (5) allowed the City to ask for additional fines at any future hearings. R.R. at 49-51.

On February 26, 2019, the trial court determined that JPR had come into compliance and then addressed the previous conditional fines and the final penalties to be assessed in the matter. The trial court converted the June 19, 2018, $7,000 conditional fine into an absolute fine and noted that JPR had still not paid the

---

[4] Phila., Pa., The Phila. Code tit. 4, Ch. 4-200.0, Subcode "PM" (The Phila. Prop. Maint. Code) §110.1 (2020).

$10,000 fine, which had been made absolute on December 18, 2018. In addition, the trial court calculated that JPR violated the Code for 612 days from the date of the initial Notice and thus, the City was entitled to nearly $800,000.[5] However, instead of granting the City the full amount, the trial court ordered a statutory fine in the amount of $35,000, in addition to the $17,000 it had already ordered, for a total of $52,000. R.R. at 61-63.

JPR now appeals to this Court.[6]

## II. Arguments

### A. JPR's Arguments

JPR acknowledges that it took over 600 days to bring the Property into Code compliance after the first violations were issued by the City. However, JPR asserts that it attempted to comply, and "at certain points . . . was under the impression that the permits that it pulled for said compliance were correct [but] learned otherwise during the hearing . . . held on December 18, 2018." JPR's Second Amended Br. at 8. JPR asserts that, once it understood the requirements for compliance, it complied in a timely fashion and, thus, the "severity of the offense is greatly mitigated." *Id*. JPR does not deny it was aware of the original Notice of

---

[5] The trial court calculated the total as follows: "9 violations x 584 days x $150.00 [=] $788,400." R.R. at 62-63.

[6] Generally, this Court reviews a trial court's assessment of a civil penalty for abuse of discretion. *Borough of Kennett Square v. Lal*, 643 A.2d 1172, 1175 (Pa. Cmwlth. 1994). The high standard of showing a reversible abuse of discretion is met only where "the law is overridden or misapplied or judgment exercised is manifestly unreasonable or is the result of partiality, prejudice, bias, or ill will." *City of Philadelphia v. DY Props., LLC*, 223 A.3d 717, 724 (Pa. Cmwlth. 2019). "An abuse of discretion is not merely an error of judgment." *Id*. To the extent JPR raises the issue of the constitutionality of the fines assessed in the present matter, our standard of review is *de novo* and our scope of review is plenary. *Com. v. Eisenberg*, 98 A.3d 1268 (Pa. 2014).

4

Violation which was sent to the Property in February 2017. However, JPR contends it was not served with notice of the trial court matter until April 2018, and thus, it did not "ignore" the Notice and that this, in turn, should be considered a mitigating factor and reduce its delay in reaching compliance from 600 days to 426 days. JPR's Reply Br. at 4.

Further, JPR argues that the Property was assessed at a value of $24,000, and that fines of $52,000 are in gross disproportion to the gravity of the offense, and thus, are "barred by the Excessive Fines Clause of the Pennsylvania Constitution[7] as defined in [*Hiko Energy, LLC v. Pennsylvania Public Utility Commission*, 163 A.3d 1079 (Pa. Cmwlth. 2017)]." JPR's Second Amended Br. at 8-9.

## B. The City's Arguments

The City argues that JPR waived its excessive fines argument because it did not raise it before the trial court. Although the City acknowledges that JPR raised the issue in its Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal, the City contends that this was far too late in the process and, thus, the issue was waived. City's Br. at 10-12. In addition, the City argues that JPR "had multiple opportunities to object to the amount of these fines starting in October 2018, when the [trial] court imposed the first conditional fine, all the way through to the final hearing in February 2019." City's Br. at 12. The City notes that, while JPR argues it did not receive notice of the final hearing, "it does not deny that the notice

---

[7] Pa. Const. art. I, §13 states: "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." The Excessive Fines Clause in the Pennsylvania Constitution is coextensive with the Eighth Amendment to the United States Constitution. U.S. CONST. amend. VIII; *See also Eisenberg,* 98 A.3d 1268.

went to its address of record . . . [or] having received the Order imposing the final set of fines." *Id.*

Further, the City asserts that, even if this Court decides to address JPR's argument that the fines were excessive, the fines "[stand] on legal footing." *Id.* In this regard, the City contends the $52,000 fine is not grossly disproportional to the 600 days of violations and "is well under the [nearly $800,000] directed by [T]he Philadelphia Code." City's Br. at 12-13. The City further argues that this Court, in *DY Properties*, 223 A.3d 717,[8] held that "property value is irrelevant to calculating fines." City's Br. at 13.

The City acknowledges that "[c]ourts will uphold [a] fine unless it is 'grossly disproportional' to the offense." City's Br. at 13 (citing, and quoting in part, *Eisenberg*, 98 A.3d at 1281). However, the City argues that the fines imposed in this case had "built-in proportionality" as the fine accumulated on a daily basis[9] and that "[t]he proportionality standard requires comparing the amount of the fine to the gravity of the offense." City's Br. at 13. Citing *Lal*, 643 A.2d 1172, the City also acknowledges that "[a] trial court should weigh mitigating and aggravating factors that include: the history and character of the defendant; the nature and circumstances of the offense; and the defendant's attitude." City's Br. at 13. In this regard, the City argues that the trial court weighed mitigating and aggravating factors and that the aggravating factors were that JPR conducted an entire gut renovation of the Property, including plumbing and electrical work, replacing a stairway, and

---

[8] The City argues that this case "is directly on point and should control the outcome here." City's Br. at 17.

[9] Relying on *Commonwealth v. Church*, 522 A.2d 30 (Pa. 1987), the City notes that "[f]ines that are assessed on a per-day or per-injury basis, like the statutory fines in this case, have built-in proportionality to the offense." City's Br. at 15.

6

installing floor trusses without a permit, leading to a change in the footprint of the Property and a violation of the City's Zoning Code. City's Br. at 14. The City further argues that there were no mitigating factors and that the trial court did not accept JPR's argument it had acted in good faith, finding that JPR had notice and did not offer a good excuse for failing to remedy the violations in a timely fashion. City's Br. at 15.

In support of its argument that the amount of the fines, here, were reasonable, the City notes that JPR's five violations, at a rate of $150-$300 per day, per violation, resulted in nearly $800,000 in accrued fines for the 612 days during which JPR was not in compliance, but that the City pursued, and the trial court awarded, the minimum fine for fewer than 50 days of violations at the minimum rate of $150 per day. City's Br. at 14.

Finally, the City asserts that JPR's argument comparing the fines to the value of the Property is irrelevant as "this Court has held that property value is not relevant to permit and construction-related fines."[10] City's Br. at 18. Further, the City argues that JPR's argument about the size of the fines matters little, or not at all, because JPR had multiple opportunities, over 20 months, to remedy the violations. *Id*. The City notes that "JPR's counsel admitted his client 'dropped the ball' on obtaining a zoning variance and could not obtain building permits without either demolishing the unpermitted addition or securing the variance" and "only have themselves [sic] to blame," if the fines make the Property "unprofitable." City's Br. at 18-19.

---

[10] The City also notes that the record contains no evidence of the Property's value and that this Court is prohibited from considering facts which are not of record. City's Br. at 17 n.3.

7

### III. Discussion

Upon review of the facts and arguments raised by the parties herein, we affirm. Similar to the property owner in *DY Properties,* JPR, here, admitted to Code violations by not appealing the Notice from the City and subsequently failing to correct its Code violations, in this case for approximately two years. Like the trial court here, the trial court in *DY Properties* ordered a fine that was below the allowable maximum. In *DY Properties*, we affirmed the trial court because the owner admitted the violations, and the fines were authorized by the Code. Thus, we determined that the fines were within the trial court's discretion. *DY Properties,* 223 A.3d 717. We see no reason we would opine otherwise in the matter *sub judice.*

Imposing daily fines is supported by considerable precedent. In fact, this Court has upheld similar and larger fines in code enforcement or zoning cases that, unlike this one, did not involve an imminent safety hazard. *See, e.g.*, *E. Penn Twp. v. Troxell* (Pa. Cmwlth., No. 875 C.D. 2011, filed Apr. 5, 2012), 2012 WL 8681524 (unreported)[11] (upholding $500 per day, per violation fine, totaling $624,500, for parking commercial vehicles, raising pigs, storing junk, and impermissibly operating a trucking terminal); *Woodruff v. Lower Southampton Twp.*, 516 A.2d 834 (Pa. Cmwlth. 1986) (upholding $100 per day fine, totaling $157,600, for operating junkyard in violation of zoning ordinance). In the present matter, the trial court did not abuse its discretion in assessing fines for JPR's violations of the Code and for its subsequent failure to correct the violations in a timely manner. However, our analysis does not end here, as JPR asserts that the assessed fines were excessive, and in violation of the Pennsylvania Constitution.

---

[11] We cite this case for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

At the outset, we address the City's argument that JPR did not raise a timely constitutional challenge and, thus, this Court cannot consider JPR's claims of constitutional infirmity. Although the trial court's Order does not address the issue of the constitutionality of the assessed fines, JPR's Answer to Complaint in Equity did, in fact, raise the issue of the excessive nature of the fines at the trial court level. Specifically, paragraph 16 of said document states: "[JPR] avers that fines in the amounts suggested by [the City] are excessive and overly burdensome, in that they far exceed the value of the [P]roperty or the potential danger under the circumstances." R.R. at 33-34. Although JPR does not cite a particular article of the Pennsylvania Constitution in this paragraph, it specifically raises the issue contemplated by the excessive fines clause of both the Pennsylvania and United States Constitutions, much in the same way that using the term "unreasonable search and seizure" would implicate Fourth Amendment concerns, even without explicitly identifying the Fourth Amendment to the United States Constitution.[12] Given that JPR raised the issue of the excessive nature of the fines in its Answer, it raised the matter at the very inception of litigation and cannot now be denied its opportunity to advance this argument on the basis it was waived.

Having determined that JPR sufficiently and timely raised the issue of constitutionality, we address whether it demonstrated the assessed fines were unconstitutionally excessive. We acknowledge and accept the City's position that "property value is irrelevant to calculating fines." City's Br. at 13 (citing *DY Props.*, 223 A.3d 717). We also acknowledge and accept the City's position that "[f]ines that are assessed on a per-day or per-injury basis . . . have built-in proportionality to the offense." City's Br. at 15 (citing *Church*, 522 A.2d 30).

---

[12] U.S. CONST. amend IV.

There is no question that JPR was in violation of the Code and that it did not come into compliance with it for approximately two years. There were multiple trial court hearings throughout that time, and at each one, the trial court gave JPR an opportunity to bring itself into compliance before the next hearing date. JPR contends that its principal was confused and that there were mitigating factors that this Court should consider. However, the record, including the trial court's relative leniency in imposing the City's fines, suggests otherwise. In addition, the trial court was authorized to fine JPR nearly $800,000 for the total number of daily violations it incurred. However, the trial court imposed fines that were, in total, 6.5% of that amount.

JPR asserts that the $52,000 in total fines imposed by the trial court was more than twice the value of the Property. However, it appears that the only information about the Property's value was provided by JPR as part of its brief on appeal to this Court and as part of its reply brief, which included an image from the City of Philadelphia's website, indicating the 2020 market value of the Property to be $24,000. JPR's Second Amended Br. at 8 and JPR's Reply Br. at 9. Further, given this Court's holdings in multiple similar cases, the value of the Property is irrelevant in these matters. The goal behind the Property Maintenance Code's daily accruing fines is to motivate property owners to work diligently to remedy ongoing violations as quickly as possible. *Church*, 522 A.2d at 34 (purpose of a fine is "to punish violators and to deter future or continued violations") (citation omitted). In light of the serious safety risks posed by JPR's complete gut renovation efforts on the Property, the significantly larger fine that was authorized by the Code, and JPR's delay in addressing the violations, we discern no abuse of discretion by the trial court in imposing $52,000 in total fines. Thus, we do not dispute the trial court's

10

determination that the assessed fines were justified here, especially where the trial court exercised leniency by providing JPR with numerous opportunities to correct its Code violations. Accordingly, we affirm the Order of the trial court.

## IV. Conclusion

Based on the foregoing analysis, we affirm the trial court's February 26, 2019 Order.

<br>

_____
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

JPR Holdings, LLC,           :
          Appellant      :
                            :
        v.               :   No. 820 C.D. 2019
                            :
City of Philadelphia       :

## **O R D E R**

**AND NOW**, this 8th day of January 2021, the Order of the Court of Common Pleas of Philadelphia County is **AFFIRMED**.

_____
J. ANDREW CROMPTON, Judge