# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia          :
                                       :

         v.                      :    No. 1529 C.D. 2019
                                         :    Argued: November 9, 2020

Svetlana Dvortsova,           :
                Appellant      :


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                    HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE ELLEN CEISLER, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT[1]                FILED: January 8, 2021

        Svetlana Dvortsova (Owner) appeals an order of the Court of Common Pleas of Philadelphia County (trial court) that imposed a statutory fine in the amount of $94,000 for violations of the Philadelphia Administrative Code (Code).[2]  Owner asserts that the trial court erred because she complied with the City of Philadelphia's (City) stop work order.  Alternatively, Owner asserts that the fine is excessive and unreasonable.  Finally, Owner asserts that the trial court denied her procedural due process rights.  Upon review, we reverse.

## Background

        On August 2, 2017, the City issued an initial notice of violation and order (Initial Notice and Order) after an inspection of Owner's property (Property), which read in pertinent part:

---

[1] This case was assigned to the opinion writer before January 4, 2021, when President Judge Leavitt served as President Judge.

[2] THE PHILADELPHIA CODE, Title 4, Subcode A, added by Bill No. 960591-A of March 26, 1997, *as amended*.

YOU ARE ORDERED TO CORRECT THE FOLLOWING
VIOLATIONS PRIOR TO THE NEXT REINSPECTION
DATE INCLUDED ON THIS NOTICE

VIOLATIONS:

The [Department of Licenses and Inspections (Department)] has issued a Stop Work Order for this premises. Erection, construction, alterations, installation, repairs, removal, demolition and other activities shall cease immediately and that the premises be vacated pending compliance *because the erection, construction, alterations, installation, repairs, removal, demolition or other activity is being performed in or on this structure or premises, or any part thereof, without the required fire prevention permit.* (See A-504.1)

Location: Entire

*Sprinklers are needed for the continuation of work on the property*[.]

Reproduced Record at 15a (R.R.__) (emphasis added). Section A-504.1 of the Code authorizes the City to issue a stop work order and require that the premises be vacated. The Initial Notice and Order stated that fines in the range of $150 to $2,000 could be imposed for each day the violation remained uncorrected.

On January 26, 2018, following the reinspection of the Property, the City issued a final warning, which appears identical to the Initial Notice and Order issued on August 2, 2017. The City advised Owner that her "failure to correct the violations noted in this, and previous notices, requires the Department to pursue additional enforcement action against [her] as provided by law." R.R. 18a.

On July 25, 2018, the City initiated a suit in equity to require Owner's compliance with the Code and impose fines. The trial court issued a rule to show cause why the City's requested relief should not be granted and set a hearing date

for September 25, 2018. The hearing was continued to December 4, 2018, because the City had not personally served the complaint on Owner.

On December 4, 2018, the parties appeared before the trial court and signed an agreement by which Owner agreed that by March 12, 2019, the next scheduled hearing, she would: (1) request the Department to "roll back" the building permit, which had then expired, or apply for a new building permit; (2) apply for "a sprinkler permit"; (3) arrange for an inspection of the Property; and (4) make "all reasonable efforts to comply" with requirements for the Property. Order to Comply by Agreement, 12/4/2018, at 2; R.R. 52a. The agreement stated that Owner's failure to complete these actions in a timely fashion could result in the imposition of a daily fine in the amount of $150; nevertheless, Owner "reserve[d] the right to argue against imposition of any fines." *Id.*

On March 12, 2019, the parties signed another agreement before the trial court, in which Owner agreed that by June 4, 2019, the next scheduled hearing, she would: (1) obtain suppression, electrical, plumbing, and all other permits required to install a fire suppression or sprinkler system at the Property; (2) upon issuance of the permits, begin installation and "work in a workmanlike fashion to complete installation of the suppression system"; (3) schedule and pass all required inspections under the permits; and (4) take all reasonable steps to ensure that the Department "has marked the [C]ode violations as 'complied.'" Order to Comply, 3/12/2019, at 2; R.R. 55a. The agreement provided that Owner's failure to complete these actions in a timely manner might result in the imposition of a daily fine in the amount of $150, and the trial court would determine, at the June 4, 2019, hearing, the sanctions to be imposed against Owner "for non-compliance with any of the terms of the Orders entered in this matter[.]" *Id.* at 2-3; R.R. 55a-56a. Likewise, the

3

agreement provided that Owner "reserves the right to argue against the imposition of any and all statutory fine amounts by [the trial court]." *Id*. at 2; R.R. 55a.

At the June 4, 2019, hearing, the City presented evidence and testimony from its building inspector Saleem Muhammad. He described the Property as a three-story masonry building with the third story as "an addition." Notes of Testimony (N.T.), 6/4/2019, at 16; R.R. 134a. To allow for the third-story addition, the City issued a building permit in March 2015. Owner's building plan showed that a sprinkler system would be installed at the premises.

Muhammad explained that the City inspected the Property in July 2017, and at that time discovered that Owner had neither obtained a permit for a fire suppression system nor installed one. For this reason, the City issued the Initial Notice and Order on August 2, 2017. Muhammad testified that he did not do the inspection. He visited the Property but was unable to enter because it was sealed.

Muhammad testified that by the December 4, 2018, hearing, the building permit had expired. Accordingly, the City "rolled back" the permit at Owner's request in April 2019. The City issued Owner a "rough-in" permit "to put the piping in" for the fire suppression system. N.T. 25; R.R. 143a. However, work had not begun on the rough-in permit. Muhammad testified that the Property had been "sealed" and, thus, no work had been done there since August 2, 2017, when the Initial Notice and Order was issued. N.T. 42; R.R. 160a.

Owner testified that she purchased the Property for investment, and it has been vacant since her purchase. In May 2017, three months before the Initial Notice and Order was issued, Owner learned that the City had revoked the building permit without notice while the construction was ongoing. Without the permit, Owner testified that she could not install a sprinkler system. She contacted the City

4

but was unable to get an answer. Owner acknowledged that she did not appeal the Initial Notice and Order; nevertheless, all construction work has stopped in accordance with the City's stop work order. The City issued the rough-in permit for installation of the sprinklers after rolling back the building permit in April 2019.

**Trial Court Decision**

After the hearing, the trial court entered an order that imposed a fine against Owner in the amount of $94,000 for "violations of Title 4 of The Philadelphia Code of General Ordinances" as cited in the Initial Notice and Order. Trial Court Order, 6/4/2019, at 1. The trial court did not specify the Code provision that Owner violated; it determined, nevertheless, that the violations constituted "Class I violations" under the Code that have not been remedied, and the Property has posed "a threat to the health, safety, and welfare of the neighboring properties, first responders, and the general public." *Id*. at 1-2. The $94,000 fine represented the $150 daily fine for the violations at the premises for 633 days. The trial court also ordered Owner to perform the following by August 4, 2019:

> a. Immediately schedule the required initial inspection and begin work to install fire suppression system under permit 960522;
>
> b. Work continuously and in a workmanlike manner in accordance with the terms of permit [] 960522 to bring the subject premises into compliance with the [] Code;
>
> c. Timely schedule and pass all intermediate and final inspections required under permit [] 960522;
>
> d. Obtain and immediately begin work under any and all additional building, plumbing, electrical permits required to install a working fire suppression system to correct the [C]ode violations at the subject premises; and

5

e. Take all reasonable steps to ensure that the Department has marked the [C]ode violations as "complied."

Trial Court Order, 6/4/2019, at 1-2. The trial court further imposed a conditional fine in the amount of $150 per day if Owner failed to comply with the terms of the final order by August 4, 2019.

Owner appealed. The trial court ordered Owner to file a Concise Statement of Errors Complained of on Appeal pursuant to PA. R.A.P. 1925(b). In her 1925(b) Statement, Owner argued, *inter alia*, that the trial court denied her due process. Owner was not able to access the court docketing system, which had been down for several weeks before the hearing. Nor was Owner able to introduce testimony from her contractor because he was unavailable on the date of the hearing. The trial court refused to postpone the hearing. Owner further argued that the trial court erred in imposing the fine because all construction work stopped in accordance with the Initial Notice and Order, and the Property has never been occupied. The City presented no evidence of a dangerous condition on the Property. As such, Owner argued that the fine was excessive.

The trial court issued an opinion pursuant to PA. R.A.P. 1925(a), stating that Owner was properly fined because she did not bring the Property into compliance with the Code. The agreements of December 4, 2018, and March 12, 2019, required Owner to obtain all permits required, complete all work necessary, and schedule and pass all inspections relating to the fire suppression system. However, Owner did not complete these actions by the time of the June 4, 2019, hearing. The trial court explained that the Code authorizes a fine of not less than $150 per day and not more than $300 per day for each offense, and the Property lacked a fire suppression system for over 600 days. Finally, the trial court rejected Owner's due process claim.

**Appeal**

On appeal,[3] Owner raises three issues for our review, which we reorder and summarize as follows. Owner first argues that the record does not support the trial court's conclusion that she violated the Initial Notice and Order. To the contrary, Owner argues that she complied with that Order and immediately stopped work on the Property. Second, Owner argues that the fine of $94,000 is excessive. Finally, Owner argues that the trial court denied her due process of law.

Owner argues, first, that the trial court erred in imposing any fine because she complied with the Initial Notice and Order, which directed that all construction on the Property "cease immediately" and the premises "be vacated" until a fire prevention permit was issued. R.R. 15a. The Initial Notice and Order recited that sprinklers "are *needed for the continuation of work* on the [P]roperty," but it did not cite a code provision for this statement. The only Code provision cited was the one authorizing a stop work order, *i.e.*, Section A-504.1 of the Code. *Id.* (emphasis added). The City did not present any evidence that Owner did work on the Property after receiving the Initial Notice and Order. Rather, she terminated construction and the Property has been vacant since she purchased it. Because Owner complied with the Initial Notice and Order, there was no basis for a fine.

The City counters that Owner admitted her violations of the Code by signing the agreements before the trial court on December 4, 2018, and March 12,

_____

[3] Owner initially appealed to the Superior Court, which transferred the case to this Court. When reviewing a trial court's decision on whether there has been a violation of an ordinance, "our review is limited to determining whether the trial court abused its discretion or committed an error of law." *Commonwealth v. Holtzapfel*, 895 A.2d 1284, 1286 n.1 (Pa. Cmwlth. 2006). Further, "[w]hether a fine is excessive under our Constitution is a question of law, therefore our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1279 (Pa. 2014).

2019. The City maintains that Owner has waived the argument that she complied with the Initial Notice and Order because she did not appeal the Order to the City's Board of License and Inspection Review. The City argues that the record supports the trial court's holding that, as of the June 4, 2019, hearing, Owner had failed "to obtain a full suppression system permit and to actually install the system." City Brief at 16.

The burden of proof in an action for a civil penalty rests upon the moving party. *Commonwealth v. Whiteford*, 884 A.2d 364, 366-67 (Pa. Cmwlth. 2005) (where an ordinance did not provide for imprisonment in lieu of payment of a fine, the violations charged were civil in nature, and "normal civil burden" applies). The plaintiff must prove that the defendant violated the ordinance under which the penalty was imposed. The trial court, sitting as fact-finder, is free to believe all, part or none of the evidence, to make all credibility determinations, and to resolve all conflicts in the evidence. This Court cannot reweigh the evidence to reach a contrary factual conclusion. *Holtzapfel*, 895 A.2d at 1289 n.2.

Here, the City filed a civil complaint seeking an injunction and imposition of statutory fines based upon its allegation that Owner did not correct the violations set forth in the Initial Notice and Order. Complaint, ¶11; R.R. 9a. The Initial Notice and Order described the "violations" as "the erection, construction, alterations, installation, repairs, removal, demolition or other activity [] *being performed* in or on this structure or premises, or any part thereof, *without the required fire prevention permit*. (See A-504.1)…. *Sprinklers are needed for the continuation of work* on the property." R.R. 15a (emphasis added).

8

Section A-504.1 of the Code, as cited in the Initial Notice and Order, authorizes the City to issue a stop work order. Section A-504.1 states in pertinent part as follows:

> The Department and, to the extent permitted under the [Pennsylvania] Construction Code Act[4] and Uniform Construction Code,[5] any Philadelphia Fire Department Battalion Chief is authorized to issue Stop Work Orders directing that erection, construction, alterations, installation, repairs, removal, demolition and other activities cease immediately and that the premises be vacated pending compliance with such orders whenever:
>
> 1. Any structure or part thereof, including any adjoining or abutting structures, is found to be in a dangerous or unsafe condition due to inadequate maintenance, deterioration, damage by natural causes, fire, or faulty construction that it is likely to cause imminent injury to persons or property.
>
> 2. Any erection, construction, alterations, installation, repairs, removal, demolition or other activity is being performed in or on any structure or premises, or part thereof, contrary to accepted construction practices or in a dangerous or unsafe manner which imperils life, safety or property, constitutes a fire or health hazard, or will interfere with a required inspection.
>
> 3. Any erection, construction, alterations, installation, repairs, removal, demolition or other activity is being performed in or on any structure or premises, or any part thereof, without required permits.
>
> ***

CODE §A-504.1.

---

[4] Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§7210.101-7210.1103.

[5] 34 Pa. Code §§401.1-405.42.

9

The Initial Notice and Order directed that construction on the Property "shall cease immediately and that the premises be vacated pending compliance[.]" R.R. 15a. Owner did not appeal but, rather, stopped construction as the Initial Notice and Order directed. Muhammad, the City's inspector, confirmed this fact, testifying that the Property has been "sealed" since August 2, 2017. N.T. 42; R.R. 160a. The Property is vacant.

In its PA. R.A.P. 1925(a) opinion, the trial court explained that it imposed the fine due to Owner's failure to comply with the terms of its December 4, 2018, and March 12, 2019, orders. The December 4, 2018, order required Owner to apply for a sprinkler permit before March 12, 2019. The March 12, 2019, order went further and required Owner to "begin installation and work in a workmanlike fashion to complete installation of the suppression system." Order to Comply, 3/12/2019, at 2; R.R. 55a. However, the Initial Notice and Order described the violations as "construction … *being performed* in or on this structure or premises, or any part thereof, *without the required fire prevention permit…. Sprinklers are needed for the continuation of work* on the [P]roperty." R.R. 15a (emphasis added). There is no dispute that construction has not been done since August 2, 2017. Further, the Initial Notice and Order did not require immediate installation of the sprinklers. Notably, the trial court's final order made no mention of Owner's failure to comply with the orders of December 4, 2018, and March 12, 2019. The trial court based the $94,000 fine on "violations of Title 4 of The Philadelphia Code of General Ordinances" as cited in the Initial Notice and Order. Trial Court Order, 6/4/2019, at 1.

For the foregoing reasons, we conclude that the trial court exceeded the bounds of the Initial Notice and Order by imposing a fine for Owner's failure to

install the sprinklers when construction has not occurred on the Property since the issuance of the Initial Notice and Order.[6]

## Conclusion

The trial court erred in imposing the $94,000 fine against Owner because the City's Initial Notice and Order did not require immediate installation of the sprinklers. It is undisputed that construction work stopped at the premises upon the issuance of the Initial Notice and Order, and the Property has been vacant since it was purchased by Owner. The trial court's December 4, 2018, and March 12, 2019, orders exceeded the bounds of the Initial Notice and Order in finding that Owner violated the Code by failing to immediately install the sprinklers. Regardless, the trial court's final order made no mention of the December 4, 2018, and March 12, 2019, orders in imposing the $94,000 fine. We thus reverse the trial court's June 4, 2019, order.

_____
MARY HANNAH LEAVITT, President Judge


Judge Ceisler dissents.

---

[6] Because we conclude that the trial court erred in imposing the fine, we need not address whether the fine imposed is excessive. We also need not address Owner's argument that the trial court violated her right to due process by refusing to continue her case so that she could access the trial court's docket information and depose her contractor. We note that Owner would not prevail on this argument because she already had a copy of the complaint and answer, and three months' notice of the June 4, 2019, hearing, which provided ample time to interview witnesses.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Philadelphia | : | |
| | : | |
| v. | : | No. 1529 C.D. 2019 |
| | : | |
| Svetlana Dvortsova, | : | |
| Appellant | : | |

## ORDER

AND NOW, this 8th day of January, 2021, the June 4, 2019, Order of the Court of Common Pleas of Philadelphia County, in the above-captioned matter, is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge