J-S05006-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHERMAN S. MACK | : | |
| | : | |
| Appellant | : | No. 655 WDA 2023 |

Appeal from the Judgment of Sentence Entered December 16, 2022
In the Court of Common Pleas of Erie County
Criminal Division at No(s):  CP-25-CR-0002118-2019

BEFORE:  PANELLA, P.J.E., KING, J., and BENDER, P.J.E.

MEMORANDUM BY PANELLA, P.J.E.:                **FILED: April 19, 2024**

Sherman Mack appeals from the judgment of sentence entered by the Erie County Court of Common Pleas after a jury convicted Mack of, *inter alia*, controlled substance contraband to confined persons prohibited pursuant to 18 Pa. C.S.A. § 5123(a) and dealing in the proceeds of unlawful activity pursuant to 18 Pa. C.S.A. § 5111(a)(1).  The charges were based on evidence showing that Mack engaged in bringing or attempting to bring contraband into SCI-Albion while he was an inmate there.

Mack raises or attempts to raise claims that: the evidence was insufficient to sustain his convictions; the trial court erred by freezing the funds in his inmate account; the concurrent sentences imposed were unreasonable; and the mandatory minimum fine of $100,000 for his Section 5111(a)(1) conviction constitutes an unconstitutional excessive fine. As we

conclude these claims are either waived or without merit, we affirm Mack's judgment of sentence.

Mack was serving a life sentence at SCI-Albion. After an investigation produced probable cause that Mack was engaged in a scheme to bring contraband into the prison, he was charged with several offenses in 2019. Those offenses included: contraband to confined persons prohibited; two counts of conspiracy to commit bribery; dealing in the proceeds of unlawful activity pursuant to Section 5111(a)(1); and two counts of possession with the intent to deliver. The matter proceeded to a jury trial.

The Commonwealth's first witness was Lieutenant Augustus Floyd, the Intelligence Gathering Lieutenant at SCI-Albion who investigates contraband introduction into the prison and "dirty" staff members, which Loyd explained is staff who has become compromised by working to bring contraband into the prison for inmates. *See* N.T., 10/17/2022, at 81-82.

Floyd learned that Mack was using another inmate's PIN number to make calls to a person named Gelenda Burkes. *See id.* at 95. On the recorded phone calls, the two talked about "oils," which is a common name for K-2 or synthetic marijuana. *See id.* at 102-103.[1] They also discussed Burkes sending

_____

[1] Floyd explained that inmates' calls are generally recorded. The Commonwealth played the recordings of the phone calls between Mack and Burkes for the jury, and also distributed transcripts of the phone calls to the jury. Neither the recordings nor the transcripts were included in the certified record sent to our Court; however, we are able to glean the general content of the calls from the testimony.

packages to "Gwen Smith" at a Conneaut Lake address Mack gave to Burkes. *See id.* at 108, 118. Floyd reported that the address Mack gave Burkes actually belonged to a corrections officer in Mack's housing unit, David Smith. *See id.* at 108, 110. Floyd stated that David Smith does not live with a Gwen Smith. *See id.* at 118.

Kimberly Allison testified that she was the paralegal at the law firm that handled Mack's mother's estate in 2018. *See* N.T., 10/18/2022, at 5-6. She stated the estate was worth approximately $75,000 and that the money was left to Mack, the sole heir. *See id.* at 6.

Mack subsequently contacted Allison and asked her to handle some money and transactions for him, to which Allison agreed. *See id.* at 7. Mack sent money to Allison in May 2018 and Allison deposited the money into her personal checking account. *See id.* at 15-16.

Mack asked Allison to make certain transactions and payments for him, and Allison kept a record of those transactions and payments. *See id.* at 8-9. Allison testified that Mack directed her to send two money orders in the amount of $500 each to Gwen Smith at the same Conneaut Lake address referenced above. *See id.* at 17, 18, 31, 33-34, 38. She also sent packages at Mack's direction to Gwen Smith at that address, including a pair of headphones. *See id.* at 17, 23, 25-26, 30, 46. Various people would make various deposits for Mack, and Allison also made a record of those deposits. *See id.* at 11, 19, 47.

Daniel Meinert, the investigator from the Department of Corrections' Bureau of Investigations and Intelligence assigned to Mack's case, also testified. He recounted a phone conversation between Mack and Burkes about Burkes sending a package to Gwen Smith at the Conneaut Lake address. *See id.* at 88. A warrant was obtained for the postal inspector to open the package when it arrived for delivery. *See id.* at 89. Meinert relayed that a package addressed to Gwen Smith at the Conneaut Lake address from Burkes was intercepted at the post office. *See id.* at 93. According to Meinert, the package contained a number of items, including five vials of liquid, two of which tested positive for THC. *See id.* at 92, 94.

Meinert testified the liquid vials were removed and the package was resealed. Meinert attempted to have the package delivered to the Conneaut Lake address, but no one was home, so a note addressed to Gwen Smith was left indicating the package could be picked up at the post office. *See id.* at 102-103. Meinert reported that it was David Smith who went to pick up the package, at which point he presented the note left at the Conneaut Lake address to the post office clerk. *See id.* at 103.

Meinert also discussed the money orders Allison sent to Gwen Smith at the behest of Mack. He stated that the cashed money orders were paid to the order of David Smith and endorsed by David Smith. *See id.* at 117-118, 122, 123-124. He also reported that one of the money orders was deposited into a bank account owned by David Smith at First National Bank and the other

money order was deposited into a bank account owned by David Smith at Huntington Bank. **See id.** at 120, 123-124. Meinert also stated that a piece of paper with the name Gwen Smith and the Conneaut Lake address was found during a search of Mack's cell. ***See id.*** at 126.

The Commonwealth also presented the testimony of Robert Robison, who is a member of the institution search team at SCI-Albion. He testified that on December 10, 2018, he was instructed to search Mack's property and found a pair of headphones that were not on the approved list and were therefore contraband. ***See id.*** at 74-75, 84. During his testimony, Meinert confirmed that he believed the headphones found by Robison were the ones "purchased by Allison and sent to Gwen Smith at David Smith's address." ***Id.*** at 125.

The jury convicted Mack of eight counts, which included contraband prohibited, two counts of conspiracy to commit bribery, dealing in the proceeds of unlawful activity, criminal use of a communication facility, unlawful use of a computer, and two counts of possession with intent to deliver. The court scheduled Mack's sentencing hearing for December 16, 2022.

Prior to sentencing, the Commonwealth filed a motion to freeze Mack's inmate account, which had a balance of $59, 229.03 at the time of the motion. The Commonwealth based this request on the fact that Mack had been convicted of a Section 5111(a) offense and the statutory penalty for that offense is:

**(b) Penalty**.—Upon conviction of a violation under subsection (a), a person shall be sentenced to a fine of the greater of $100,000 or twice the value of the property involved in the transaction or to imprisonment for not more than 20 years, or both.

18 Pa. C.S.A. § 5111(b). According to the Commonwealth, because Mack was subject to a fine that encompassed the entirety of his current account holdings, it was requesting that the court freeze Mack's account pending sentencing.

The court held a hearing on the motion. Mack primarily argued his account should not be frozen because the amount of the transactions on which his criminal convictions were based was substantially less than the amount in his inmate account. On November 30, 2022, the court granted the Commonwealth's motion and froze Mack's inmate account pending sentencing.

The court held Mack's sentencing hearing as scheduled, after which the court imposed the following sentence:

Count 1 – Contraband; 35 months to 70 months [of imprisonment]. It was made consecutive to the life sentence [Mack] is serving; Count 2 – Criminal Conspiracy to commit Bribery: 24 months to 48 months [of imprisonment], to be served consecutively to Count 1; Count 3 – Criminal Conspiracy to Commit Bribery: 24 months to 48 months [of imprisonment], concurrent to Count 2; Count 4 – Dealing with Proceeds of Unlawful Activity: 40 months to 80 months [of imprisonment], consecutive to the sentences imposed at Count 1 and Count 2; Count 6 – Criminal Communication Facility: 24 months to 48 months [of imprisonment], concurrent to the previous Counts; Count 7 – Unlawful Use of Computer and Other Computer Crimes: 35 months to 70 months [of imprisonment], concurrent to the previous sentences; Count 8 – Possession with Intent to Deliver:

- 6 -

> 24 months to 48 months [of imprisonment], consecutive to Counts 1, 2 and 4; Count 9 – Possession with Intent to Deliver: 24 months to 48 months [of imprisonment], concurrent [to Count 8].

Trial Court Opinion, 09/01/2023, at 3-4. The court also sentenced Mack to pay the statutory fine of $100,000 for the dealing with the proceeds of unlawful activity conviction pursuant to Section 5111(a) and Section 5111(b). It noted the amount of $100,000 was greater than the amount of twice the value of the property involved, which the trial court found would be approximately $4,000. **See** Trial Court Opinion, 5/16/2023, at 1.

Mack filed a post-sentence motion. In that motion, he asserted the trial court should "reconsider the seizure" of his inmate account funds because the assets in the account were mainly from an inheritance he received from his mother. Post-Sentence Motion, 1/17/2023, at 1 (unpaginated).[2] He also maintained, in effect, that the evidence was generally insufficient to sustain the convictions and that the trial court should "consolidate the sentences of incarceration since the case involved perpetrating one scheme to introduce contraband into SCI-Albion." **Id.** at 2 (unpaginated). The trial court subsequently granted leave for Mack to amend his post-sentence motion to include the issue regarding the constitutionality of the $100,000 minimum fine mandated by Section 5111(b).

---

[2] The trial court entered an order extending the deadline for Mack to file post-sentence motions to January 17, 2023.

The trial court denied Mack's post-sentence motion on May 16, 2023. Mack filed a timely notice of appeal and complied with the court's directive to file a Pa.R.A.P. 1925(b) statement. Mack then filed a supplemental statement, raising a claim of trial counsel's ineffectiveness. The trial court entered an order in response to the supplemental statement advising Mack that ineffectiveness claims, such as the one raised by Mack, are properly raised in a post-conviction relief petition as opposed to on direct appeal.

The court filed a Rule 1925(a) opinion addressing the claims raised in Mack's initial statement, finding that the claims were without merit and urging this Court to affirm Mack's judgment of sentence. Mack now raises the following issues for our consideration:

1. The evidence in this case was insufficient to convict him of the charges in this case when there was no proof presented that [Mack] was directly involved in bringing contraband into the prison[.]

2. The court abused its discretion in failing to reconsider the seizure of the funds [Mack] had in an inmate account [ ], especially when the funds included money from an inheritance from his mother[.]

3. The sentences in this case were manifestly excessive and clearly unreasonable, particularly in their consecutiveness, when the trial court did not consider mitigating factors[.]

4. The mandatory minimum fine of $100,000 is in violation of the Eighth Amendment to the United States Constitution and [Article I,] Section 13 of the Pennsylvania Constitution[.]

Appellant's Brief at 2 (unnecessary capitalization omitted; issue numbers added and sequence of issues reordered).[3]

We address Mack's sufficiency claim first. We are compelled to find it is waived.

In the first place, Mack did not properly raise this issue in his Rule 1925(b) statement. His statement only raised this general sufficiency claim:

> [Mack] argues that insufficient evidence existed in this case to convict him; specifically, he argues that evidence was not presented that would prove that he ordered or instructed any individual to smuggle anything into the prison, no one involved in the alleged smuggling plot testified at trial, and the phone calls in this case did not show any specific intent or scheme, and no contraband was found in [Mack's] possession.

Statement of Matters Complained of on Appeal, 8/14/2023, at 2-3 (unpaginated).

The statement did not identify which of the six different offenses of which Mack was convicted, much less the elements of the offenses he was challenging. *See Commonwealth v. Williams*, 959 A.2d 1252, 1257-1258 (Pa. Super. 2008) (stating that a sufficiency claim is waived if the Rule 1925(b) statement fails to articulate the specific elements of the crime for which the appellant is challenging as having been insufficiently proven, and regardless of whether the trial court addressed the issue).

_____

[3] Mack dropped a footnote stating, *inter alia*, that he was not going to raise the ineffectiveness claim set forth in his supplemental Rule 1925 statement as he agreed with the trial court that the ineffectiveness claim should properly be brought in a post-conviction relief petition. *See id.* at 2, n.1.

Even if not waived for this reason, we would find it waived on the basis that Mack's argument regarding his sufficiency claim in his appellate brief is also woefully undeveloped. There, Mack provides general law on sufficiency of evidence, cites to two cases without cogently explaining how they support a finding of insufficiency in his case and then states:

> The charges in this case were not supported by the evidence when the Commonwealth proved that a paralegal sent funds to a third party who worked in the prison, without having specific evidence that [ ] Mack coordinated those transactions.

Appellant's Brief at 13. He does not identify which offense he is challenging, any element of any offense of which he was convicted, or how the Commonwealth did not meet its burden of proof as to that specific element. The claim is waived for this reason as well. *See Commonwealth v. Love*, 896 A.2d 1276, 1287 (Pa. Super. 2006) (stating that claims that are not sufficiently developed are waived); *Commonwealth v. Rahman*, 75 A.3d 497, 504 (Pa. Super. 2013) (stating that if an appellant does not meaningfully discuss a claim with citation to relevant authority it is waived).

Moreover, we fully adopt the trial court's excellent discussion in rejecting this contention on the merits in its Pa.R.A.P. 1925(a) Opinion dated September 1, 2023 and its Opinion and Order of Court denying the post-sentencing motion dated May 16, 2023.

Next, we address Mack's claim that the trial court abused its discretion by freezing the funds in his inmate account, which included inheritance

- 10 -

money, prior to sentencing. Mack has failed to demonstrate an abuse of discretion.

In rejecting Mack's argument below, the trial court explained that Section 9728(b)(5) of the Sentencing Code expressly allows the Department of Corrections to collect court-ordered fines from an inmate's prison account. *See* 42 Pa. C.S.A. § 9728(b)(5). The trial court also noted that the Sentencing Code generally does not contemplate the source of the funds in an inmate's account and therefore, funds can be deducted from an inmate's account even if the source of the funds is a gift or inheritance. *See* Trial Court Opinion, 5/16/2023, at 2. In support, the trial court cited *Danyish v. Department of Corrections*, which stated:

> [Section 9728(b)(5) does not provide] an exception for gifts placed in an inmate's personal account, and it does not require the Department to account for the source of all funds in an inmate's account before making deductions. … The source of funds is of no moment.

845 A.2d 260, 263 (Pa. Cmwlth. 2004). The trial court therefore found Mack's claim that his inmate account could not be seized because the funds in the account were largely sourced from an inheritance was without merit.

The court also found Mack's claim that the court erred by seizing his funds prior to sentencing as opposed to after the fine had been imposed at sentencing was likewise meritless. The court explained there were instances, similar to what occurred here, where prosecutors:

> seize bank accounts or other financial assets of an individual being prosecuted, which frozen funds are then available, to the court's

recollection, to be utilized for the payment of fines and costs[.] Regardless, [Mack's] status as an inmate at a state correctional facility and the statute referred to above [Section 9728] did give the Commonwealth the right to request that his accounts be frozen which resulted in the court order [freezing the account].

Trial Court Opinion, 5/16/2023, at 2.

We see no error in the court's determination that Mack's claims were meritless, and Mack's bald allegations to the contrary do not persuade us otherwise. Mack renews his summary claims that the trial court erred by freezing funds that came from an inheritance and before the fine was imposed at sentencing. However, he does not cite to any case law or legal authority to support these contentions with the exception of his threadbare assertion that the "case of **Danysh v. Wetzel** [ ] arguably supports [his] argument." Appellant's Brief at 11. He not only fails to provide a citation for this case, but he also does not cogently explain how the case would mandate a conclusion that the trial court committed an abuse of discretion here. Our review of the **Danysh v. Wetzel** decision, which we had to locate independently, convinces us that it does not support such a conclusion. **See Danysh v. Wetzel**, 49 A.3d 1 (Pa. Cmwlth. 2012)(holding that an inmate's entry into a voluntary payment plan does not prohibit the making of deductions from his inmate account for a court-ordered fine under Section 9728), *affirmed by*, 619 Pa. 623 (Pa. 2013) (*per curiam* order).

Given the above, we conclude that Mack has not presented this Court with an argument on which we could base a finding that the trial court abused its discretion by freezing the funds in his account. No relief is due.

In the third claim, Mack asserts the trial court abused its discretion by imposing a length of sentence that was excessive. Although Mack acknowledges his sentences were all in the standard range of the guidelines, he argues the aggregate sentence was nonetheless excessive because the court ordered some of his sentences to run consecutively. This claim also fails.

As with all appellants who challenge the discretionary aspects of their sentence, Mack is not entitled to review of such a claim as of right. **See Commonwealth v. Griffin**, 65 A.3d 932, 935 (Pa. Super. 2013). To the contrary, this Court will only review a discretionary sentencing claim if the appellant has shown he filed a timely notice of appeal, properly preserved his claim at sentencing or in a post-sentence motion, included a statement pursuant to Pa.R.A.P 2119(f) in his brief, and raised a substantial question in his Rule 2119(f) statement that his sentence is not appropriate under the Sentencing Code. **See id.**

Here, Mack did not preserve his claim regarding the consecutive nature of his sentences at his sentencing hearing or in his post-sentence motion. Although Mack did assert in his post-sentence motion that the court should have "consolidated" his sentences, the trial court reasonably interpreted that to be a claim that the court should have merged Mack's convictions for

sentencing purposes. ***See*** Trial Court Opinion, 5/16/2023, at 5. Clearly, merger of sentences is different from the court's discretionary decision to impose sentences consecutively as opposed to concurrently, which is the claim Mack attempts to raise here. Therefore, he did not properly preserve this claim.

Even if he had, we would also find that Mack failed to raise a substantial question. ***See Commonwealth v. Swope***, 123 A.3d 333, 338 (Pa. Super. 2015) (stating that a substantial question only exists where the appellant advances a colorable claim that the sentencing court's actions were inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process).

In his Rule 2119(f) statement, Mack provides general law on the discretionary aspects of sentencing and then applies that law to his case by stating only this: "Mack argues that the sentence handed down by the trial court was unreasonable in its consecutiveness." Appellant's Brief at 7. He does not point to any case by this Court stating that such a claim constitutes a substantial question. In fact, although there are circumstances under which we will review the consecutive nature of a sentence, this Court has specifically stated that "a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question." ***Swope***, 123 A.3d at 339 (Pa. Super. 2015) (citation omitted). As this is the entire argument that Mack offers in his Rule 2119(f) statement, he has failed to establish that he is entitled to

review of this discretionary aspect of the sentence claim. **See Commonwealth v. Mouzan**, 812 A.2d 617, 627 (Pa. 2002) (stating that an appellant will only be granted review of his discretionary sentencing claim where the appellant's Rule 2119(f) statement sufficiently raises a substantial question).

Even if he were entitled to review of his claim, this Court has repeatedly stated that it is squarely within the discretion of the sentencing court whether to impose sentences concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. **See, e.g., Commonwealth v. Zirkle**, 107 A.3d 127, 133 (Pa. Super. 2014); 42 Pa.C.S.A. § 9721. We will only disturb the sentencing court's decision whether to impose sentences concurrently or consecutively when we find the court has committed a manifest abuse of discretion. **See Zirkle**, 107 A.3d at 132. This requires "the appellant [to] establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." **Id.** (citation omitted).

Mack has not done so here. Instead, in his argument section, Mack asserts, without further explanation, that the court's imposition of consecutive sentences was unreasonable because Mack was involved with his family, his actions stemmed from the same scheme, and the court could have protected the public and served his rehabilitative needs with a shorter sentence. **See**

- 15 -

Appellant's Brief at 9-10. These conclusory and undeveloped assertions simply do not provide a basis on which we could conclude that the sentencing court manifestly abused its discretion by imposing consecutive sentences.

In his final claim, Mack argues the $100,000 mandatory minimum fine in Section 5111(b) is an excessive fine in violation of the Eighth Amendment to the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution. We conclude Mack has not met the heavy burden required to establish the unconstitutionality of Section 5111(b).

Both the Eighth Amendment and Article I, Section 13 prohibit the imposition of excessive fines. **See** U.S. Const. amend. VIII; Pa. Const. art. I, § 13. "Article I, Section 13 of the Pennsylvania Constitution is co-extensive with the Eighth Amendment." **Commonwealth v. 5444 Spruce Street, Philadelphia**, 832 A.2d 396, 399 (Pa. 2003); **Commonwealth v. May**, 271 A.3d 475, 484 (Pa. Super. 2022).

Mack's constitutional challenge that the mandatory fine imposed on him was excessive is a question of law for which our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Omar**, 981 A.2d 179, 185 (Pa. 2009). As the party challenging the constitutionality of Section 5111(b), Mack carries the heavy burden of demonstrating Section 5111(b) clearly, palpably, and plainly violates the Eighth Amendment of the United States Constitution or Article I, Section 13 of the Pennsylvania Constitution. **See id.** "If there is any doubt that a challenger has failed to reach this high

- 16 -

burden, then that doubt must be resolved in favor of finding the statute constitutional." ***Commonwealth v. Eisenberg***, 98 A.3d 1268, 1283 (Pa. 2014) (citation omitted).

Here, in asserting the mandatory fine imposed on him pursuant to Section 5111(b) was excessive, Mack relies almost exclusively on the Pennsylvania Supreme Court's decision in ***Eisenberg***. We therefore discuss that case in detail. There, the Court considered an "unusual direct appeal" from [Matthew Eisenberg's] judgment of sentence for first-degree misdemeanor theft under the Gaming Act, 4 Pa. C.S.A. § 1518(a)(17), after Eisenberg stole $200 from his employer, a casino. ***Eisenberg***, 98 A.3d at 1270. The sentencing court ordered Eisenberg to pay the mandatory minimum fine of $75,000 pursuant to Section 1518(b)(2)(i) of the Gaming Act, which, at the time, mandated a fine of "not less than $75,000 nor more than $150,000 if the person is an individual" who commits a first violation of Section 1518(a)(17). ***See id.*** at 1271.[4] Eisenberg appealed, arguing that the mandatory minimum fine violated Article I, Section 13 of the Pennsylvania Constitution's prohibition on excessive fines.

In considering this issue, the Court stated that the Pennsylvania Constitution excessive fines clause "employs a concept of proportionality." ***Id.***

---

[4] Though not mentioned by Mack, Section 1518(b)(2)(i)(A) was amended in 2017 to state that for a first violation of subsection (17), an individual shall be sentenced to pay a fine of "not more than $150,000." ***See*** 2017, Oct. 30, P.L. 419, No. 42, § 31.

at 1279-1280. This proportionality analysis, the Court stated, requires a comparison between the amount of the fine and the gravity of the offense which triggered the fine. *See id.* at 1281. While the constitutional prohibition against excessive fines requires the fine to be "reasonably proportionate to the crimes which occasion them," the *Eisenberg* Court emphasized there need not be a "strict proportionality" between the fine imposed and the harm resulting from the offense. *Id.* at 1287, 1281. Rather, a fine violates the excessive fines clause if it is in gross disproportion to the gravity of the offense. *See id.* at 1281.

The *Eisenberg* Court also noted that in the Court's recent decision of *Commonwealth v. Baker*, 78 A.3d 1044 (Pa. 2013), the Court analyzed a claim of whether a mandatory minimum sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment. As the *Eisenberg* Court observed, the Court in *Baker* explained that the federal proportionality test "examines: (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Eisenberg*, 98 A.3d at 1282 (citation omitted). The *Eisenberg* Court noted that *Baker* only addressed the first prong of the test

because it did not find gross disproportionality between the sentence and the offense in that case.[5]

Against this backdrop, **Eisenberg** went on to apply the proportionality test to Eisenberg's state constitutional claim. The Court noted that fines serve two primary purposes: to punish and to deter. **See id.** It then proceeded to examine the purposes of the Gaming Act in some detail and ultimately concluded that the statement of purpose of the original Gaming Act was not served by imposing the hefty mandatory fine on the theft offense at issue in the case before it. **See id.** at 1283-1284, 1286. The Court also found the fine imposed on Eisenberg was not reasonably proportionate to his crime, especially in light of the trial court's lack of discretion:

> [T]he fine here, when measured against the conduct triggering the punishment, and the lack of discretion afforded the trial court, is constitutionally excessive. Simply put, [Eisenberg], who had no prior record, stole $200 from his employer, which happened to be a casino. There was no violence involved; there was apparently no grand scheme involved to defraud either the casino or its patrons. Employee thefts are unfortunately common; [Eisenberg's] conduct, if charged under the Crimes Code, exposed him to a maximum possible fine of $10,000. Instead, because [Eisenberg's] theft occurred at a casino, the trial court had no discretion, under the Gaming Act, but to impose a minimum fine of $75,000 – an amount that was 375 times the amount of the theft.

---

[5] **Eisenberg** also observed that the concurring opinion in **Baker** "note[d] that the proper approach to a proportionality claim sounding in Pennsylvania Constitution might not follow federal law lockstep." **Id.** at 1283. However, as stated above, the Pennsylvania Supreme Court has previously held that the protections provided by Article I, Section 13 are coextensive with those provided by the Eighth Amendment. **See 5444 Spruce Street, Philadelphia** 832 A.2d at 399.

*** 

> [To be sure], the statute affords the trial court no discretion to inquire into the specific facts of the individual circumstances of a case, which, in this instance, happens to include a twenty-six year old defendant with no prior record who was, at the time of sentencing, enrolled full-time as a student, living with his fiancée, expecting his first child and did not own a house.

*Id.* at 1285-1286.

The ***Eisenberg*** Court also noted the amount of time it could take to pay off the $75,000 fine, cautioning that "the mandatory nature of the provision could act to effectively pauperize a defendant for a single act." *Id.* at 1286.

Finally, the Court stated that a comparison of the mandatory fines imposable for other offenses supported its finding that the fine levied against Eisenberg was excessive. For example, the Court pointed out, the maximum fine imposable for murder is $50,000. ***See id.*** at 1287. Based on all the above, the Court found the mandatory $75,000 fine imposed on Eisenberg for his theft of $200 was, under the circumstances, unconstitutionally excessive under Article I, Section 13 of the Pennsylvania Constitution. ***See id.*** (holding that the mandatory fine, "as imposed here," violates the Pennsylvania Constitution).

Despite Mack's almost exclusive reliance on ***Eisenberg***, in applying that case to his, he states only this:

> [As in ***Eisenberg***,] the fine lodged in [this] case will pauperize [Mack] [for] a single act and is harsher than a fine in a murder case. Additionally, the statute imposes the fine "or" an imposition of up to twenty years in prison, or both - the court in this case

- 20 -

imposed both sentences, thereby imposing a sentence which overall was cruel and unusual. A $100,000 [fine] is not proportional to the act of "Dealing in Proceeds of Unlawful Activities" - a financial transaction [ ] should not receive a harsher penalty than, for example, an individual who commits murder.

Appellant's Brief at 15.

That is the entire argument Mack offers in support of his constitutional challenge to the fine imposed upon him. Critically, nowhere in his undeveloped argument does Mack discuss the gravity of his offense or the circumstances of his offense, despite **Eisenberg**'s clear directive that this is an indispensable part of the proportionality analysis required in any excessive fine claim. He barely addresses the amount of the fine, offering nothing more than bare allegations of disproportionality and its potential, without explanation or any reference to his inmate account or offenses, to "pauperize him for a single act."

Moreover, Mack does not even attempt to identify the legislative purpose behind the dealing in proceeds of unlawful activities statute, much less discuss, as the **Eisenberg** Court did, the interplay between the statutory purpose and its extension to the mandatory fine for the offense at hand. Mack also does not argue how the fine imposed here fails to serve the underlying purposes of fines in general, a point the trial court specifically addressed:

> [A]s was pointed out in the **Eisenberg** case, "the primary purpose of a fine or penalty is two-fold: to punish violators and to deter future or continued violations." In this case, [Mack] was already incarcerated as an inmate serving a life sentence when the crime at issue occurred. Therefore, no additional period of incarceration would serve any actual type of punishment or deterrent. However,

- 21 -

a fine of this amount, although seemingly well in excess of punishment in the monies involved in the transactions for which he was convicted, does, in fact, serve as a deterrent to this defendant and any other defendants similarly situated. Therefore, this court's determination at sentencing as to the imposition of [the] fine will not be set aside.

Trial Court Opinion, 5/16/2023, at 3-4.

Mack does not in any way meaningfully respond to the trial court's conclusions. All in all, the shortcomings in Mack's brief are fatal to his claim. He offers nothing but bald and summary assertions, without any meaningful analysis pursuant to the case he so heavily relies upon, or, really, any meaningful analysis at all. These deficiencies preclude us from conducting any meaningful review of his claim, and certainly precludes us from reaching a conclusion that Mack has met his burden of demonstrating that Section 5111(b) clearly, palpably and plainly violates either the Eighth Amendment or Article I, Section 13.[6] Accordingly, we agree with the trial court that Mack has not shown either that the mandatory fine in Section 5111(b) is an unconstitutional excessive fine or that he is entitled to any relief.

Judgment of sentence affirmed.

---

[6] To be fair, we feel compelled to note that the Commonwealth's advocacy also leaves much to be desired. As it did with Mack's other three claims, the Commonwealth merely regurgitates the trial court's analysis on the issue without any independent argument whatsoever to augment its block-quote summary of the relevant portion of the trial court's opinion.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


DATE: 04/19/2024